Donald Wayne SIVLEY, Jr., Appellant,

v.

Brenda Sharlene SIVLEY, Appellee,

and

Donald Wayne SIVLEY, Jr., Realtor,

v.

The Honorable Richard BEACOM, Judge of the 354th Judicial District Court of Rains County, Texas, Sitting in probate, Respondent.

Nos. 12–97–00068–CV, 12–97–00153–CV, 12–97–00140–CV.

Court of Appeals of Texas, Tyler.

May 29, 1998.

Harvey G. Joseph, Bob J. Shelton, Dallas, for Relator.

Gordon Bogen, Dallas, for Real Party-In-terest.

Richard Beacom, pro se.

Before HOLCOMB and HADDEN, JJ., and BILL BASS, J., Retired Justice, Twelfth Court of Appeals, Tyler, sitting by assignment.

HADDEN, Justice.

In this opinion we address two appeals and one Petition for Writ of Prohibition [1] which stem from the same underlying contested probated proceeding. Cause No. 12–97–00068–CV is an appeal of a judgment ren-

---

1. Appellant, Donald Wayne Sivley, Jr. ("Don, Jr.") filed his Motion for Leave to File Petition for Writ of Prohibition on May 20, 1997. On June 23, 1997, the case was abated when Don, Jr. filed a petition for Chapter 13 bankruptcy. The motion for leave to file had not been ruled upon when the proceedings were stayed and the appeal was abated. The proceedings were reinstated on October 13, 1997. However, during the interim the new Texas Rules of Appellate Procedure became effective. Consequently, the court has chosen to observe the new rules and to take no action on the Motion for Leave to File Petition for Writ of Prohibition. Instead, the court will dispose of the Petition for Writ of Prohibition itself under Tex.R.App.P. 52, which took effect September 1, 1997.

dered October 11, 1996 wherein the trial court ordered Appellant, Donald Wayne Sivley, Jr. ("Don, Jr.") to transfer various properties to Appellee, Brenda Sharlene Sivley ("Brenda"). Cause No. 12–97–00153–CV is an appeal of a turnover order issued by the trial court on April 4, 1997, ordering Don, Jr. to transfer to Brenda the assets awarded her in the October 11, 1996 judgment pursuant to Section 31.002 of the Texas Civil Practice and Remedies Code. And finally, in Cause No. 12–97–00140–CV, Don, Jr. filed a petition for a writ of prohibition requesting that the court prevent a contempt hearing set for May 23, 1997. We granted temporary relief and stayed the contempt hearing. We will address the three proceedings separately.

### CAUSE NO. 12–97–00068–CV

### APPEAL FROM OCTOBER 11, 1996 JUDGMENT

In eleven points of error, Don, Jr. alleges that the trial court had no subject matter jurisdiction over the matters adjudicated in the October 11, 1996 judgment; that Brenda had no pleadings on file supporting the relief granted Brenda in the judgment; that the judgment was not in conformity with the terms of a purported settlement agreement; and that the evidence was legally and factually insufficient to support the trial court's findings. We will affirm.

### The Divorce Decree

It is necessary that we review the procedural path traveled by the parties in this protracted litigation. On February 21, 1990, in the 256th District Court, Dallas County, Texas, ("the 256th"), Brenda was divorced from Donald Wayne Sivley, Sr. ("Don, Sr."). There the court found that the principal assets of the marriage consisted of community property in the nature of licenses and equipment to conduct bingo games. Because such assets were not readily divisible, the court awarded Brenda a $200,000.00 judgment against Don, Sr. and found that he was a constructive trustee for the community estate with respect to all licenses and interests in bingo parlors held in his name or subject to his control until the satisfaction of the judgment awarded Brenda. The court further ordered that the businesses and bingo licenses were subject to an equitable lien in favor of Brenda to secure the payment of the judgment and that Don, Sr. was to pay $500.00 per week to Brenda until the judgment, plus post-judgment interest, was satisfied. Don, Sr. was also enjoined by the court from voluntarily selling, transferring or relinquishing any bingo licenses without the written consent of Brenda or until the judgment was satisfied. The court ordered that any violation of the injunction or any breach of his fiduciary duty as a constructive trustee would be deemed just cause for the appointment of a receiver.

### Appointment of Receiver

Brenda subsequently filed a motion to appoint a receiver alleging that Don, Sr. had violated the terms of the divorce decree. The court granted the motion. In its order dated November 19, 1992, the court found that Don, Sr. had transferred certain community property interests without the consent of Brenda, had failed to pay $500.00 per week as ordered, and had breached his fiduciary duty as constructive trustee. The court further found that it would be in the best interest of the parties to appoint a receiver in order to protect the community estate and to enforce the $200,000.00 judgment and the injunction. Accordingly, the court appointed Lane McDaniel as the receiver ("the Receiver"). The Receiver was ordered to take possession of Don, Sr.'s nonexempt property, including all licenses and interests in bingo parlors held in his name or subject to his control, to sell it, and pay the proceeds to Brenda to the extent necessary to satisfy the $200,000.00 judgment. The court further ordered that Don, Sr. was to turn over to the Receiver all necessary stock, property, equipment, books, records, licenses and cash belonging to the bingo parlor businesses.

### Competing Applications for Estate Administrator After the Death of Don, Sr.

On February 15, 1996, Don, Sr. died intestate in Emory, Rains County, Texas. On April 15, 1996, the Receiver and Brenda filed an application in the County Court of Rains

County, Texas, ("the County Court") for the appointment of a suitable person as temporary administrator of the estate of Don, Sr. In their application, they allege the facts surrounding the above-described divorce and appointment of the Receiver, and claim that approximately $65,000.00 of the $200,000.00 judgment remained to be paid. Copies of the divorce decree and order appointing the Receiver were attached and made a part of their application for all purposes.

They further alleged that since Don, Sr.'s death, the bingo parlors continued to be operated without an accounting to the Receiver and that they were unable to ascertain, locate and collect the community property assets of Don, Sr. for the purpose of fully satisfying the judgment in accordance with the divorce decree and powers of the Receiver. They allege that the difficulties had been brought about because of the lack of cooperation of Don, Sr.'s surviving wife, Beverly Jean Sivley ("Beverly") and his son, Don, Jr. In their application, they asked the court to grant the temporary administrator the power to take all action necessary to comply with the orders in the divorce decree and order appointing the Receiver. The Receiver further requested authority to take charge of all bingo parlors and licenses operated by Don, Jr., for the purpose of collecting and enforcing the balance on the judgment awarded Brenda. On April 24, 1996, Beverly and Don, Jr. also filed their application requesting the court to appoint them as temporary co-administrators of Don, Sr.'s estate alleging that they, as heirs of Don, Sr., were the rightful persons to be appointed.

### Probate Proceedings Transferred to District Court

On May 2, 1996, citing Section 5(b) of the Texas Probate Code, the Receiver moved to transfer the probate proceeding from the County Court to an appropriate district court "to hear matters in connection with this cause because this matter will be contested by virtue of the orders of the 256th Judicial District Court of Dallas County, Texas." In his motion, the Receiver alleged that:

... This is and will continue to be a contested cause of action.

Brenda Sivley has already brought a third party action against a close business associate of the deceased involving an asset which is part of the Receivership Estate created by the 256th Judicial District Court.

Movant has discovered sufficient facts to sue additional third party defendants for fraud, conspiracy to commit fraud, ultra vires acts and other torts and will file additional lawsuits....

On May 7, 1996, the County Court granted the motion and ordered that "this cause be transferred to the 354th Judicial District Court of Rains County, Texas." In proceedings before the 354th Judicial District Court ("the 354th"), Brenda and the Receiver filed an opposition to the appointment and the granting of letters to Beverly and Don, Jr. setting forth the contested probate matters heretofore described. Don, Jr. withdrew his request to be appointed co-administrator and asked the court to appoint Beverly.

### Rule 11 Settlement Agreement— Appointment of Beverly as Administratrix

When the parties appeared for an evidentiary hearing on the competing applications, they announced to the court that a settlement agreement had been reached. On June 14, 1996, the settlement was placed into the court record through testimony and statements by attorneys under Tex.R.Civ.P. 11 ("the Rule 11 agreement"). In the Rule 11 agreement, Don, Jr. was to transfer to Brenda a business previously operated by Don, Sr. consisting of a bingo parlor at 7610 Military Parkway, Dallas, Texas, and including the license of the business and all its assets. In exchange, Brenda and the Receiver agreed to release Don, Jr. and Beverly and to withdraw their opposition to the appointment of Beverly as administratrix. Beverly was appointed administratrix of Don, Sr.'s estate.

### The October 11, 1996 Judgment

Further disputes arose. The Receiver filed a motion to remove Beverly as the representative of the estate on August 23, 1996, alleging *inter alia* that she had breach-

ed the Rule 11 agreement. Beverly filed a motion for judgment and submitted a proposed judgment which she alleged conformed to the Rule 11 agreement. Brenda opposed the motion alleging that the proposed judgment submitted by Beverly was contrary to the express terms of the Rule 11 agreement. She further alleged that Don, Jr. had failed to perform the terms of the Rule 11 agreement. The parties appeared for a hearing on the motions on October 11, 1996. Beverly, Brenda, and the Receiver announced that a proposed judgment had been negotiated and agreed to by the parties. ·Neither Don, Jr. nor his attorney voiced any objection to the agreed judgment, and it was thus signed by the trial judge.

In the judgment, the court found that Don, Jr. failed to perform the terms of the Rule 11 agreement in several respects. The court also found that as a result of Don, Jr.'s failure to perform the Rule 11 agreement, the Receiver and Brenda incurred substantial additional fees and costs in connection with Brenda's effort to collect the judgment; that Don, Jr. did not tender the license as ordered nor did he pay the $5,000.00 to the Receiver as ordered; that Don, Jr. had been in possession of the bingo facility of 7610 Military Parkway, Dallas, Texas, since the death of Don, Sr. and that it had been operated under the name of West Miller Bingo, Inc.; that Don, Jr. had collected revenues in connection with such bingo operations; and that those revenues were a part of the nonexempt property being administered by the Receiver under the orders of the 256th. In its judgment the court ordered Don, Jr. to transfer the license under which West Miller Bingo, Inc. conducted its operations at 7610 Military Parkway, Dallas, Texas, as of June 14, 1996, the date of the Rule 11 agreement. It further ordered Don, Jr. to execute, acknowledge and deliver to Brenda all documents required by the Texas Lottery Commission necessary to transfer such license. In addition, Don, Jr. was ordered to transfer all leasehold interests at 7610 Military Parkway, Dallas, Texas, and all leasehold improvements, equipment and personal property located thereon as of June 14, 1996. Don, Jr. was to deliver to Brenda all items in connection with the business known as West

Miller Bingo, Inc., including furniture, fixtures, machinery, equipment, inventory, cash, accounts, goods and supplies. Finally, the judgment stated that the $200,000.00 judgment would be fully satisfied when all terms of its judgment were satisfied at which time the Receiver and Brenda were to release and discharge Don, Jr. and Beverly.

### Subject Matter Jurisdiction

In his first point of error, Don, Jr. asserts that the trial court erred in entering the October 11, 1996 judgment because the trial court did not have subject matter jurisdiction. He argues that under Section 5(b) of the Texas Probate Code, the transfer only vested jurisdiction in the 354th over the specific matters actually transferred. He contends that the only matter actually transferred was the issue of who would be appointed administrator of the estate of Don, Sr. In response, Brenda asserts that the collection of the judgment owed to Brenda was also a contested probate matter before the County Court at the time of the transfer and thus was transferred as well, giving the 354th subject matter jurisdiction. Consequently, the question before us is whether the matters upon which judgment was rendered on October 11, 1996 by the 354th were "contested probate matters" transferred to it by the County Court under Section 5(b) of the Texas Probate Code. We hold that the matters which the 354th addressed in its judgment of October 11, 1996 were transferred to it in the County Court's order, thus giving the 354th subject matter jurisdiction.

Subject matter jurisdiction is a prerequisite for the trial court to take any action whatsoever. It cannot be conferred by consent or waiver, and the lack of subject matter jurisdiction may be raised at any time. *Tex. Ass'n of Business v. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex.1993). Lack of subject matter jurisdiction renders a judgment void rather than merely voidable. *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990). However, subject matter jurisdiction may be transferred pursuant to statute. Section 5(b) of the Texas Probate Code addresses the transfer of probate matters by a

constitutional county court to a district court, and provides as follows:

. . .

   (b) In those counties where there is no statutory probate court, county court at law or other statutory court exercising the jurisdiction of a probate court, all applications, petitions and motions regarding probate and administrations shall be filed and heard in the county court, except that in contested probate matters, the judge of the county court may on his own motion (or shall on the motion of any party to the proceeding, according to the motion) . . . transfer the contested portion of the proceeding to the district court, which may then hear contested matter as if originally filed in district court. The county court shall continue to exercise jurisdiction over the management of the estate with the exception of the contested matter until final disposition of the contested matter is made by the assigned judge or the district court. In contested matters transferred to the district court in those counties, the district court, concurrently with the county court, shall have the general jurisdiction of a probate court. Upon resolution of all pending contested matters, the contested portion of the probate proceeding shall be transferred by the district court to the county court for further proceedings not inconsistent with the orders of the district court. . . .

TEX.PROB.CODE ANN. § 5(b) (Vernon 1998).

■ Thus, the basis for the 354th having jurisdiction would be the transfer of the contested portion of the probate proceeding from the County Court. Neither the legislature nor the courts have defined the term "contested" as used in the context of Section 5(b). However, we agree with the analysis of the term by the Austin court of appeals, which held that a probate matter can be considered "contested," so as to allow invocation of Section 5(b), when a pleading is filed which sets out sufficient facts to show some reasonable grounds for the belief that there are two or more parties or claimants to assets of an estate and there is a bona fide controversy between them concerning those assets. *Brown v. Crockett,* 601 S.W.2d 188, 190 (Tex.Civ.App.—Austin 1980, no writ). The First District Court of Appeals has also addressed this issue, stating that the words "contested probate matters" intended to include all matters in a probate proceeding where the pleadings on file demonstrate that the parties to the suit have adopted adversary positions. *Jackson v. Thompson,* 610 S.W.2d 519, 522 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ).

■ In the present case, the matter over which the 354th exercised its jurisdiction in its judgment of October 11, 1996 concerned the transfer of a bingo license and business operation to Brenda for the purpose of satisfying the balance due on the $200,000.00 judgment rendered in the divorce decree. Having examined the pleadings carefully, it is apparent that the application of these non-exempt assets, which included the bingo parlors belonging to the estate of Don, Sr., to the collection and satisfaction of the $200,-000.00 judgment awarded Brenda was, from the beginning, a "contested probate matter." The allegations prior to transfer included a recitation of the $200,000.00 judgment and lien against Don, Sr.; the failure of Don, Sr. during his lifetime to comply with the court's orders to satisfy such judgment from the bingo parlor receipts; the allegation that after Don, Sr.'s death the Receiver was unable to obtain the cooperation of Don, Sr.'s family members, specifically Beverly and Don, Jr., in order to satisfy the judgment; and that the bingo businesses continued to operate after the death of Don, Sr. to the exclusion of the Receiver. Furthermore, in his application the Receiver sought authority to take over and operate the bingo parlors to the exclusion of Don, Jr. until such time as the balance of the $200,000.00 judgment was paid. Thus, the adverse interests of the parties extended beyond the appointment of the representative of the Don, Sr. estate. The order appointing the Receiver while Don, Sr. was alive created an adverse interest between both Brenda and the Receiver, and Don, Sr. When Don, Sr. died that adverse interest continued to exist between the

Receiver and the family of Don, Sr. as to the ownership, control, and possession of Don, Sr.'s nonexempt properties until the full $200,000.00 judgment was satisfied. This was the contested probate matter from the beginning and appeared to be the catalyst that generated all proceedings.

Thus, it appears that at the time of transfer, the parties alleged facts showing a bona fide controversy between the parties regarding the commitment of assets of the estate to the payment of the $200,000.00 judgment in favor of Brenda, and that the parties adopted adversary positions in the matter. Furthermore, Brenda and the Receiver's motion itself sought to transfer the entire cause. The order of the County Court likewise stated "It is ordered that this cause is transferred to the 354th...." Accordingly, we hold that the 354th had subject matter jurisdiction over the matters rendered in its judgment of October 11, 1996. Point of error number one is overruled.

### Brenda's Pleadings Supporting Judgment

In his point of error number two, Don, Jr. asserts that the trial court erred in rendering its October 11, 1996 judgment because Brenda did not have pleadings on file requesting the affirmative relief that was granted against Don, Jr. We disagree. It is the law that a trial court may not grant relief to a party in absence of pleadings to support that relief. *Moreno v. Moore*, 897 S.W.2d 439, 442 (Tex.App.—Corpus Christi 1995, no writ). However, pleadings may be liberally construed to support the judgment. *V.W. Frost v. Sun Oil Co. (Delaware)*, 560 S.W.2d 467 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ). The initial application for appointment of a temporary administrator filed by Brenda and the Receiver alleged the lack of cooperation of Don, Jr. and Beverly in obtaining satisfaction of the judgment in favor of Brenda. They further requested that the administrator be vested with authority to execute any and all instruments necessary to operate the businesses including all bingo parlors or licenses held by Don, Jr. Thus, from a liberal construction of the pleadings, it appears that the Receiver and Brenda were affirmatively seeking relief by request-

ing that assets of the estate be committed to the payment of the judgment as originally intended in the divorce decree. The judgment of October 11, 1996 accomplished this. As we have stated under point of error number one, the thrust of the proceedings from the beginning was to satisfy the claim of the Receiver and Brenda for payment of the judgment from the assets of Don, Sr. and his estate. We hold that the judgment rendered was supported by the pleadings. Point of error number two is overruled.

### Differences Between Rule 11 Agreement and October 11, 1996 Judgment

In point of error number three, Don, Jr. alleges that the trial court erred in rendering its October 11, 1996 judgment because it differed materially from the Rule 11 agreement dictated into the record on June 14, 1996. He asserts that when a trial court intends to render judgment on a settlement agreement of the parties, the signed judgment must literally comply with the terms of that agreement. *Tinney v. Willingham*, 897 S.W.2d 543 (Tex.App.—Fort Worth 1995, no writ). He argues that the judgment rendered on a party's settlement agreement is unenforceable since it conflicts with the terms of the settlement agreement. *See Tinney*, 897 S.W.2d at 543.

After this cause was transferred to the 354th, Beverly and Don, Jr. filed additional pleadings requesting the court to appoint Beverly as the permanent administrator of the estate. Brenda and the Receiver filed an opposition to the appointment of Beverly or Don, Jr. on the grounds that neither person was suitable to serve because "both and other persons acting in active concert and conspiracy in groups of one or more have already converted substantial assets of the estate to their own use and benefit and to the use and benefit of those acting in concert with them."

At a hearing on June 14, 1996, the attorneys for the parties appeared and announced that the contested issues had been settled, and that they wanted to put it all on the record. Through testimony received from Don, Jr., Beverly, Brenda, an employee of Don, Jr.'s and statements from the attorneys,

the settlement agreement was placed into the record of the 354th. At the conclusion of the hearing, the trial judge stated that "You have a Rule 11 agreement that is binding contractually on all of you." The court then entered an order appointing Beverly as permanent administrator of the estate of Don, Sr. which was part of the settlement agreement.

From the colloquy at the end of the hearing between the court and the attorneys, it was apparently decided that the cause would not be transferred back to the County Court, but would be maintained in the 354th until "all of it was done." Beverly, as administratrix, filed an inventory and appraisal with exhibits as well as notice to all creditors. The Receiver filed his authenticated claims which included his costs and expenses. Beverly filed a memorandum disallowing all of the Receiver's claim. The parties again were engaged in conflict. The Receiver objected to the inventory and appraisement filed by Beverly and filed a motion to remove Beverly as administratrix of the estate. Furthermore, the Receiver served Beverly with a request for production of documents and a set of interrogatories. Beverly thereafter filed a motion for protective order in regard to these discovery measures. Beverly also filed a motion in the 256th requesting that the receivership be terminated, which was denied. Beverly then filed a motion for judgment tracking the Rule 11 agreement dictated in open court on June 14, 1996. Brenda and the Receiver filed a response contesting her motion.

On October 11, 1996, the parties and their attorneys appeared for a hearing on these latest motions and announced to the court that an agreed judgment had been reached by the parties. It was announced by Brenda as part of the agreement that in consideration of the entry of the new judgment she would withdraw her motion to remove Beverly as administratrix, withdraw all discovery proceedings, and withdraw her objection to the inventory and appraisement filed by Beverly. The court signed the judgment of October 11, 1996 which forms the basis for the appeal to this court.

On October 18, 1996, Don, Jr. filed a motion with the 354th asking it to reconsider the judgment. He alleged that the October 11, 1996 judgment was grossly unfair, inequitable and did not comport to the agreement entered on the record at the Rule 11 hearing. On November 22, 1996, the trial court conducted a hearing on the motion for reconsideration and denied the motion. The judgment of October 11, 1996 was then severed from the remainder of the probate proceedings. Don, Jr. filed a motion for new trial which was overruled by operation of law.

It is uncontested that the attorney representing Don, Jr. at the October 11, 1996 hearing was David Cain ("Cain"). In the October 11, 1996 judgment, the court made a specific finding that Don, Jr. appeared in person and was represented by Cain. However, Don, Jr. subsequently obtained a new attorney, Bob Shelton ("Shelton"). Shelton represented Don, Jr. at the hearing on the motion for reconsideration. Shelton admitted that he was present at the October 11, 1996 hearing and that he was provided with a draft of a proposed judgment by Cain. However, Shelton did not object to the judgment draft because he was not Don, Jr.'s attorney at the October 11, 1996 hearing, and he believed that Don, Jr. was well represented by Cain. That proposed judgment differed materially from what was ultimately rendered. At the conclusion of the hearing on the motion to reconsider, the trial court agreed in open court that the October 11, 1996 judgment contained matters that were not covered in the Rule 11 agreement. The Receiver also commented in open court that although the judgment tracked very closely the language of the Rule 11 agreement, it also contained other provisions as well. No objections were made to the added provisions as voiced by the judge and the Receiver. In the November 22, 1996 order denying Don, Jr.'s motion to reconsider and set aside the October 11, 1996 judgment, the court made the following findings:

The Court further finds that all parties to this cause were represented at the hearing on Beverly Jean Sivley's *Motion to Enter Judgment* heard by this Court on October 11, 1996; that there are differences between the Rule 11 Agreement entered into the records of this Court on June 14, 1996

and the Judgment entered by this Court on October 11, 1996; and that the Judgment entered by this Court on October 11, 1996 supercedes the Rule 11 Agreement of June 14, 1996.

Therefore, it appears that the trial court found that a new agreed judgment was presented and approved by the court, and that the agreed judgment superseded the Rule 11 agreement.

■■■ Don, Jr. acknowledges that he was represented by Cain at the October 11, 1996 hearing, but he complains that the *form* of the judgment rendered by the trial court was different from the one that Don, Jr. understood from Cain was to be rendered. It appears, therefore, that Don, Jr.'s complaint is essentially one relating to the adequacy of his representation by counsel, and that this complaint should provide a basis for this court to set aside an otherwise valid agreed judgment. A claim of inadequate representation, however, does not alone constitute grounds for reversal. *See King v. Bishop,* 879 S.W.2d 222, 224 (Tex.App.—Houston [14th Dist.] 1994, no writ); *Hollaway v. Hollaway,* 792 S.W.2d 168, 171 (Tex.App.—Houston [1st Dist.] 1990, writ denied). We conclude that the October 11, 1996 judgment represented a new agreement between the parties that superseded the Rule 11 agreement, and thus, the trial court did not err in rendering such judgment. Point of error number three is overruled.

*Legal and Factual Insufficiency*

■■■■ In points of error four through eleven, Don, Jr. asserts that the trial court erred in rendering its October 11, 1996 judgment because there was legally insufficient evidence and, in the alternative, factually insufficient evidence to support several findings in the judgment. Brenda argues that since the judgment of October 11, 1996 was an agreed judgment between the parties which superseded the Rule 11 agreement, Don, Jr.'s arguments about the differences between the two are irrelevant and form no basis for an appeal. We agree. As we have heretofore concluded, the judgment of October 11, 1996 was a new agreed judgment by the parties which superseded the Rule 11

agreement, and therefore, it would not have been necessary for the judgment to be supported by evidence in the record. Furthermore, it should be noted that Don, Jr. did not file a request for findings of fact and conclusions of law after the October 11, 1996 judgment was rendered. As a result, the judgment implies that it made all necessary findings of fact to support the judgment. *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). Accordingly, points of error four through eleven are overruled. The judgment of October 11, 1996 is *affirmed.*

## CAUSE NO. 12–97–00153–CV

### THE TURNOVER ORDER

On April 4, 1997, Brenda applied for a turnover order under Section 31.002 of the Texas Civil Practice and Remedies Code requesting the court to order Don, Jr. to transfer the properties awarded to her in the October 11, 1996 judgment. Brenda also requested additional attorney's fees incurred in the application for the turnover order. On that same day, and without notice to Don, Jr. or his attorneys, the trial court entered the turnover order granting all of what Brenda requested. On appeal, Don, Jr. presents ten issues for review. We will affirm.

Don, Jr.'s first issue is whether an *ex parte* entry of a turnover order is proper under Section 31.002 of the Texas Civil Practice and Remedies Code. Issues two through four raised by Don, Jr. are whether the trial court's turnover order under Section 31.002 violated due process of law, due course of law, and the right to trial by jury provisions of the United States Constitution and Texas Constitution. Issue five asks whether the *ex parte* turnover hearings violated Tex.R.Civ.P. 21. We will discuss issues one through five together.

■■■■ The granting of a turnover order is reviewed under an abuse of discretion standard. *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991); *Dale v. Finance America Corp.,* 929 S.W.2d 495, 497 (Tex.App.—Fort Worth 1996, writ denied). A trial court may be reversed for abusing its discretion when the court acted in an unreasonable or arbitrary manner. *Dale,* 929

S.W.2d at 497. An abuse of discretion occurs when the trial court acts without reference to any guiding rules and principles. *Id.* Turnover orders are governed by Section 31.002 of the Texas Civil Practice and Remedies Code. That statute affords a judgment creditor aid from a court of appropriate jurisdiction to obtain satisfaction of a judgment if the judgment debtor owns property that cannot be readily attached or levied on by ordinary legal process, and is not exempt from attachment, execution or seizure. TEX.CIV. PRAC. & REM.CODE ANN. § 31.002(a) (Vernon 1997). It includes orders which the trial court enters to enforce an order that has been refused or disobeyed. *See* TEX.CIV. PRAC. & REM.CODE ANN. § 31.002(c) (Vernon 1997).

The statute itself does not provide for notice or a hearing to be afforded a judgment debtor in a turnover proceeding. TEX.CIV. PRAC. & REM.CODE ANN. § 31.002 (Vernon 1997). *See Ex parte Johnson,* 654 S.W.2d 415, 418 (Tex.1983) (although judgment debtor received notice and his attorney appeared at the hearing, the court in dicta observed that the statute allows ex parte entry of the order without notice and hearing); *Ross v. 3D Tower Ltd.,* 824 S.W.2d 270, 272 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (notice and opportunity to be heard was afforded judgment debtor; however, in dicta, the court found that notice or opportunity to be heard was not required by the statute).

The question before us, however, is whether the trial court's failure to provide prior notice and a hearing before the issuance of the turnover order under Section 31.002 violated Don, Jr.'s constitutional rights to due process and trial by jury even though the turnover statute does not require it. Due process of law requires that an individual is entitled to notice and hearing before he is deprived of a property right. U.S. CONST. amend. XIV; TEX.CONST. art. I, § 19. The issue of whether post-judgment collection proceedings compromised constitutional due process principles was addressed by the Supreme Court of the United States in *Endicott–Johnson Corporation v. Encyclopedia Press,* 266 U.S. 285, 288–290, 45 S.Ct. 61, 69 L.Ed. 288 (1924). In *Endicott–Johnson,* the judgment debtor contended that a New York statute was in conflict with the constitutional due process clause because it authorized the issuance of a garnishment execution without giving notice to the judgment debtor or affording him a hearing. In holding that due process was not violated, the court reasoned as follows:

> ... the established rules of our system of jurisprudence do not require that a defendant who has been granted an opportunity to be heard and has had his day in court, should, after a judgment has been rendered against him, have a further notice and hearing before supplemental proceedings are taken to reach his property in satisfaction of the judgment. Thus, in the absence of a statutory requirement, it is not essential that he be given notice before the issuance of an execution against his tangible property; after the rendition of the judgment he must take "notice of what will follow," no further notice being "necessary to advance justice."

*Endicott–Johnson Corporation,* 45 S.Ct. at 62–63.

Texas courts have adopted the analysis of *Endicott–Johnson* in upholding the constitutionality of various post-judgment proceedings. In *Ex parte Johnson,* the Texas Supreme Court acknowledged that the appellant had been given notice of the hearing, but gave credence to the analysis and holding in *Endicott–Johnson* by noting in a footnote that the judgment debtor was "not unfairly surprised" by the court's turnover order. Citing *Endicott–Johnson,* the court stated that "the judgment rendered against Johnson ... put him on notice that post-judgment collection proceedings would follow." *Ex parte Johnson,* 654 S.W.2d at 418. In *Pitts v. Dallas Nurseries Garden Ctr., Inc.,* 545 S.W.2d 34, 37 (Tex.Civ. App.—Texarkana 1976, no writ), a post-judgment garnishment proceeding, the appellant challenged the constitutionality of the garnishment process. Citing *Endicott–Johnson,* the Texarkana court of appeals rejected this challenge, stating that "after the rendition of a valid final judgment, the defendant must take notice of what will follow." *Pitts,* 545 S.W.2d at 37. In *Merritt*

*v. Harris County,* 775 S.W.2d 17, 21 (Tex. App.—Houston [14th Dist.] 1989, writ denied), the appellant challenged the constitutionality of an eviction proceeding issued pursuant to a forcible entry and detainer action. The court held that due process was not violative because the judgment "afforded appellant's with notice that postjudgment proceedings would follow." *Merritt,* 775 S.W.2d at 21, citing *Endicott–Johnson* and *Ex parte Johnson.*

The courts of appeals which have specifically addressed turnover orders have also acknowledged this reasoning. In *Ross,* the court rejected appellant's challenge to a turnover order stating that a judgment puts the debtor on notice "that satisfaction will be pursued." *Ross,* 824 S.W.2d at 272, *citing Merritt.* In *Plaza Court, Ltd. v. West,* 879 S.W.2d 271, 276 (Tex.App.—Houston [14th Dist.] 1994, no writ), an original mandamus action, the relator contended that the trial court abused its discretion by entering an ex parte turnover order without notice or a hearing. Citing the statute as its authority, the court held that the relators did not have the right to notice or a hearing regarding the attempt to effect enforcement of the turnover order. In *Thomas v. Thomas,* 917 S.W.2d 425, 433–34 (Tex.App.—Waco 1996, no writ), the court stated that a judgment was subject to collection, and notice can be implied that the creditor would attempt to collect on the judgment.

In the instant case, an agreed judgment had been rendered which was the result of three separate hearings in open court at which Don, Jr. and his attorney were present and had an opportunity to be heard. When the turnover order was issued by the trial court tracking the provisions of the agreed judgment, Don, Jr. could not have been unfairly surprised. Don, Jr. was on notice that post-judgment proceedings would follow. Thus, based upon the provisions of the statute and the *Endicott–Johnson* analysis, we hold that Don, Jr. had been provided the notice and hearing to which he was entitled under the United States and Texas constitutions; thus, the trial court did not abuse its discretion by issuing the turnover order without additional notice or hearing.

Don, Jr. also argues that the *ex parte* proceedings conducted in the instant case were wholly inconsistent with Texas Rule of Civil Procedure 21, which requires that all motions are to be served on all parties not less than three days before the time specified for the hearing. This issue was not raised before the trial court and was thus not preserved for review. TEX.R.APP.P. 33.1(a). However, in the interest of justice, we will briefly address this complaint. Although Section 31.002 does not expressly state that turnover orders may be granted without notice, the statute, when read in context, provides aid in the satisfaction of judgments without the need to give notice. It has long been established that where a rule of procedure conflicts with a legislative enactment, the rule must yield. *Few v. Charter Oak Fire Ins. Co.,* 463 S.W.2d 424 (Tex.1971); *C.E. Duke's Wrecker Service, Inc. v. Oakley,* 526 S.W.2d 228, 232 (Tex.Civ. App.—Houston [1st Dist.] 1975, writ ref. n.r.e.). Since Section 31.002 does specifically not require notice, then no notice is required pursuant to Rule 21. Furthermore, even if Rule 21 was applicable, Don, Jr.'s remedy would have been sanctions under Rule 21b. Sanctions, however, were not requested of the trial court and were therefore waived. Issues one through five are overruled.

Issue six raised by Don, Jr. was withdrawn.

Issue seven raised by Don, Jr. is whether it was an abuse of discretion for the trial court to enter an *ex parte* turnover order without a hearing or without receiving any evidence. As previously stated, the opening statement of Section 31.002 clearly states that the intent of the statute is to aid in obtaining satisfaction on a previously rendered judgment. The statute itself contains no provisions contemplating a hearing or an evidentiary proceeding. Don, Jr. argues that the failure to require the presentation of evidence on the application for a turnover order constituted an abuse of discretion by the trial court. However, the trial court may only be reversed if it is determined that the court acted in an unreasonable and arbitrary manner without reference to any guiding

rules or principles. *Beaumont Bank, N.A.,* 806 S.W.2d at 226; *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238 (Tex.1985). In *Beaumont Bank, N.A.,* the Supreme Court stated that the trial court's issuance of a turnover order, even if predicated on an erroneous conclusion of law, will not be reversed for an abuse of discretion if the judgment is sustainable for any reason. *Beaumont Bank, N.A.,* 806 S.W.2d at 226. In addressing the abuse of discretion standard, we note that the trial court had already conducted a hearing on the matter on June 14, 1996 and again on October 11, 1996. After the agreed judgment was rendered, Don, Jr. further sought relief from the judgment by way of a motion for a reconsideration which was also heard by the trial court. Thus, the trial court had already heard on at least three occasions evidence and arguments on the contested issues which culminated in the turnover order. Thus, we conclude that the trial court's decision to grant the turnover order without a hearing or the presentation of evidence was not unreasonable or arbitrary and was not an abuse of discretion. Issue seven is overruled.

Issue eight raised by Don, Jr. is whether the trial court abused its discretion by entering its *ex parte* turnover order based upon the judgment of October 11, 1996 since the judgment did not strictly conform to the terms of the Rule 11 agreement. Issue nine is whether it was an abuse of discretion by the trial court to enter its *ex parte* turnover order when there were no pleadings on file by Brenda requesting affirmative relief against him. Issue ten is whether it was an abuse of discretion by the trial court to enter its *ex parte* turnover order based upon the October 11, 1996 judgment when the court had no subject matter jurisdiction to do so. We have previously addressed these issues above under points one, two and three in Cause No. 12–97–00068–CV and we now adopt our reasoning and holdings in those points. Issues eight, nine and ten are overruled.

■ Finally, we address the issue of sanctions requested by Brenda against Don, Jr. for delay. We may assess damages against a party for bringing frivolous appeal.

*See* Tex.R.App.P. 45. However, before we do so we must determine that the appeal was taken for delay only and without sufficient cause. *Jones v. Colley,* 820 S.W.2d 863, 867 (Tex.App.—Texarkana 1991, writ denied). We have reviewed the record and arguments of counsel and are inclined to sympathize with Brenda because of her time and efforts to ultimately collect the $200,000.00 judgment granted to her in the divorce decree. However, we decline to assess sanctions at this time.

The judgment of the trial court issuing the amended turnover order is *affirmed* in all respects.

## CAUSE NO. 12–97–00140–CV

### THE WRIT OF PROHIBITION

The trial court rendered its turnover order on April 9, 1997 ordering Don, Jr. to deliver the property awarded Brenda pursuant to Section 31.002. On April 22, 1997, Brenda filed a motion for contempt against Don, Jr. alleging that he failed and refused to obey the commands of the court as set forth in the turnover order. Brenda moved the court to hold Don, Jr. in contempt, and requested that he be jailed for six months and fined $500.00 for each violation alleged, and that he be ordered to pay a reasonable attorney's fees in connection with the contempt proceeding. On April 22, 1997, the trial court ordered Don, Jr. to appear on May 23, 1997 to show cause why he should not be held in contempt for disobedience of the court's turnover order.

On May 20, 1997, Don, Jr. filed an original proceeding in this court requesting that a writ of prohibition be directed to the 354th which would prevent it from holding any contempt proceedings to enforce its orders. As grounds for this writ, Don, Jr. claimed that enforcement of the order would be improper because the turnover order of the court was on appeal before this court. On May 21, 1997, this court granted temporary relief staying all proceedings in this cause pending the further orders of this court.

■ A writ of prohibition is used to protect the subject matter of an appeal or to prohibit an unlawful interference with the

enforcement of a superior court's orders and judgments. *Holloway v. Fifth Court of Appeals,* 767 S.W.2d 680, 683 (Tex.1989); *Chang v. Resolution Trust Corp.,* 814 S.W.2d 543, 545 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding). The writ of prohibition has three functions: preventing interference with higher courts in deciding a pending appeal, preventing inferior courts from entertaining suits which will relitigate controversies which have already been settled by issuing courts, and prohibiting a trial court's action when it affirmatively appears that the court lacks jurisdiction. *Texas Capital Bank–Westwood v. Johnson,* 864 S.W.2d 186, 187 (Tex.App.—Texarkana 1993, orig. proceeding); *McClelland v. Partida,* 818 S.W.2d 453, 456 (Tex.App.—Corpus Christi 1991, orig. proceeding).

In the present case, the writ was requested by Don, Jr. because he claimed that the trial court lacked jurisdiction to take the asserted action and because it would affect the disposition of this appeal. However, we have determined that the turnover order is enforceable. Consequently, we deny the Petition for Writ of Prohibition and lift the stay ordered pursuant to Don, Jr.'s Motion for Temporary Relief.

Petition for writ of prohibition *denied.*