# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

**444444444444444**
**NO. 03-03-00390-CV**
**444444444444444**

**Randall Schulze, D.C., Appellant**

**v.**

**Cap Collection JV7, Appellee**

**4444444444444444444444444444444444444444444444444444444444444444**
**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT**
**NO. 00-048-C277, HONORABLE KEN ANDERSON, JUDGE PRESIDING**
**4444444444444444444444444444444444444444444444444444444444444444**

## M E M O R A N D U M   O P I N I O N

In this case, we must consider the validity of a district court's order granting turnover relief at an *ex parte* hearing to collect on a default judgment. In six issues, appellant Randall Schulze argues that the turnover order ought to be reversed because no record was made of the proceedings and the trial court did not make any findings of fact or conclusions of law; because he was denied his right to a trial by jury; because he claimed that the turnover order did not describe the property to be seized with specificity; and because the trial court abused its discretion in awarding attorney's fees and in ordering the Bexar County Sheriff to seize the property. For the reasons stated below, we affirm the judgment of the district court.

## BACKGROUND

Schulze owns and operates a chiropractic clinic in San Antonio. As a result of a dispute over a sale of receivables, Cap Collection, a collection agency located in Williamson County, filed suit in Williamson County under the Texas Deceptive Trade Practices Act. *See* Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 2002 & Supp. 2004). Schulze received notice but failed to answer or appear. On April 13, 2000, the district court conducted a hearing but did not create a record. At the conclusion of the hearing, the district court entered a default judgment against Schulze, in which it found that he sold accounts receivable to Cap Collection but that those accounts receivable were not sold as warranted. The district court then awarded Cap Collection $276,560 in actual damages, and $553,120 in punitive damages, costs, interest, and attorney's fees.

After unsuccessfully attempting to collect on the judgment, Cap Collection notified Schulze and his wife, Barbara Schulze, that it intended to depose them on September 10, 2001, in an attempt to identify their assets. On September 7, Schulze requested an extension of time to produce the documents, and both Schulze and his wife agreed in writing to produce the requested documents on September 25 and to reschedule their depositions for that date. However, neither Schulze nor his wife appeared on September 25. When reached by telephone by Cap Collection's attorneys, Schulze reported that his wife was working and would not attend. Without explanation, he also stated that he would not attend the deposition either. When Cap Collection's attorneys offered to delay the deposition until later in the day so that he could appear, he refused but offered to mail the requested documents to their offices. Cap Collection then filed a motion to compel their depositions, which the district court granted, ordering them to appear for depositions on October 23.

2

*See* Tex. R. Civ. P. 215.1. Both Schulze and his wife failed to appear on October 23, and on January 24, 2002, Cap Collection filed a second motion to compel their depositions. *See id.* On January 30, the court again ordered Schulze and his wife to appear for depositions, this time on February 13. Schulze appeared on February 13, but his wife did not.

Meanwhile, in June 2001, Schulze had created a "Commercial Security Agreement" by which he purported to create for himself a secured interest in all his assets. In this document, he listed his assets, including his ownership of Schulze Chiropractic Center in San Antonio, and attempted to give the "real man" Randall Martin Schulze a security interest in all assets owned by the "juristic person" Randall Martin Schulze.[1] On September 21, 2001, Schulze created a "Declaration of Expatriation/Repatriation." In this document, he outlined his belief that the United States government is a fraudulent government under which he functions by coercion. Thus, he "declared" himself independent of the government, which he termed "a federal corporation." Finally, in response to Cap Collection's first motion to compel his deposition, he filed a "special appearance" on October 15 in which he argued that he was not a citizen of the United States as a result of his "Declaration of Expatriation/Repatriation"; that the only means by which Cap Collection could collect on the judgment debt would be through the Uniform Commercial Code on an entity governed by that body of law; and that Cap Collection had acted to commit fraud on the district court by attempting to collect the judgment debt against him because he was not an entity governed by the Uniform Commercial Code.

---

[1] These terms appear to be of Schulze's own creation. This document contains no evidence that "Randall Martin Schulze" was registered as a separate legal entity from Schulze.

3

For over a year after Schulze was deposed (and over three years after the district court first entered the default judgment that created the debt in this case), Cap Collection was still not able to collect on the judgment. On May 20, 2003, it filed an application for turnover relief and for appointment of a receiver. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002(b) (West Supp. 2004); *see also Newman v. Toy*, 926 S.W.2d 629, 630 (Tex. App.—Austin 1996, pet. denied). In particular, Cap Collection asserted that the following property was owned by Schulze but not readily attached or levied on by ordinary legal process:

(1) Any and all assumed names, trade names, and internet domain names licensed, owned or used by Schulze, specifically including "Schulze Chiropractic";

(2) All stock in the corporation known as "Schulze Chiropractic Center of San Antonio, Inc.";

(3) All assets of the business being operated as "Schulze Chiropractic" or the corporation known as "Schulze Chiropractic Center of San Antonio, Inc.";

(4) All receivables in existence for chiropractic work performed by Schulze, whether those receivables are owned by Schulze, by the business known as "Schulze Chiropractic" or by the corporation known as "Schulze Chiropractic Center of San Antonio, Inc.," or otherwise;

(5) All receivables owned by Schulze, by the business known as "Schulze Chiropractic" or by the corporation known as "Schulze Chiropractic Center of San Antonio, Inc.";

(6) All of Schulze's right, title, and interest in that certain "Commercial Security Agreement" executed on June 20, 2001.[2]

---

[2] During the hearing on the application, Cap Collection clarified that it did not know whether the "Commercial Security Agreement" has any value. Thus, it asked the district court to include it on the list of assets to be turned over "to the extent that the lien is valid and has any value."

4

*See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a). At an *ex parte* hearing without notice to Schulze, Cap Collection summarized the history of the case. It argued that Schulze would attempt to avoid any order issued by the court if he were given notice of the hearing. Upon examination of the case file, the district court concluded that "it seems to be, based on his past actions, a proper fear." The district court granted the motion, ordered Schulze to turn over to Cap Collection items two, four, five, and six from the motion, and appointed a receiver. It also awarded Cap Collection $1,500 in attorney's fees. At this time, the approximate value of the judgment was $1,128,086.

Schulze was then served with the district court's order[3] and contacted by the appointed receiver. Schulze refused to turn over the ordered property to the receiver, and Cap Collection filed another application for turnover relief, this time requesting that the district court order Schulze to turn over the property to the Bexar County Sheriff, who would then tender the property to the receiver. *See id*. § 31.002(b)(1). After another *ex parte* hearing, the district court granted Cap Collection's application. Through a new attorney, Schulze then filed a request for findings of fact and conclusions of law. *See* Tex. R. Civ. P. 296. After twenty days passed and the district court had not filed its findings and conclusions, Schulze filed a notice of past due findings of fact and conclusions of law. *See* Tex. R. Civ. P. 297. The district court did not act within the forty days allotted by the rules. This appeal followed.

---

[3] Schulze's attorney for the underlying judgment was also served. At that time, that attorney notified Cap Collection that he no longer represented Schulze.

5

**DISCUSSION**

In six issues, Schulze argues that the district court abused its discretion in awarding turnover relief, in appointing a receiver, and in awarding attorney's fees.[4] We begin with the appropriate standard of review.

The purpose of the turnover statute is to assist a judgment creditor in reaching certain property of a judgment debtor to obtain satisfaction on a judgment. *See Commerce Sav. Ass'n v. Welch*, 783 S.W.2d 668, 671 (Tex. App.—San Antonio 1989, no writ). Property may be subject to turnover if it: (1) is owned by the judgment debtor; (2) cannot be readily attached or levied on by ordinary legal process; and (3) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities. Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a)(1) & (2).

We review a turnover order, an appointment of a receiver, and an award of attorney's fees under an abuse-of-discretion standard of review. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Texas 1991) (turnover order); *Huffmeyer v. Mann*, 49 S.W.3d 554, 559 (Tex. App.—Corpus Christi 2001, no pet.) (receiver); *In re Herring*, 983 S.W.2d 61, 65 (Tex. App.—Corpus Christi 1998, no pet.). We reverse a trial court for abusing its discretion only if we find that the court acted in an unreasonable or arbitrary manner. *Id.* That is, an abuse of discretion occurs when a trial court acts "without reference to any guiding rules and principles." *Downer v.*

---

[4] Schulze reported his "Issues Presented" differently than he argued them in the body of his brief. We will address them as actually argued.

6

*Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).  A corollary principle is that we may not reverse for abuse of discretion merely because we disagree with a decision of the trial court, if that decision was within the trial court's discretionary authority.  *Id.* at 242.  A trial court's issuance of a turnover order, even if predicated on an erroneous conclusion of law, will not be reversed for abuse of discretion if the judgment is sustainable for any reason.  *Buller*, 806 S.W.2d at 226.

### *Award of Turnover Relief*

In his first issue, Schulze points out that he filed a request for findings of fact and conclusions of law and a notice of past due findings of fact and conclusions of law but that the district court failed to respond.  *See* Tex. R. Civ. P. 278, 279.  Thus, he argues that the district court's failure is reversible error.  *See Bergman v. Bergman*, 828 S.W.2d 555, 557 (Tex. App.—El Paso 1992, no writ).  Assuming the court erred, we must determine if that error was harmful.  Tex. R. App. P. 184(b); *Cherne Industries, Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989).  Because the trial court's duty to file findings and conclusions is mandatory, the failure to respond when all requests have been properly made is presumed harmful, unless the record before the appellate court "affirmatively shows that the complaining party has suffered no injury."  *Magallanes*, 763 S.W.2d at 772 (quoting *Wagner v. Riske*, 178 S.W.2d 117, 120 (Tex. 1944)).

We have reviewed the record in this case and find that Schulze has suffered no injury.  The turnover orders were based on a judgment entered when Schulze failed to appear for the hearing on the underlying suit.  He then received notices of Cap Collection's intention to depose him to

identify his assets, but he failed to show on one occasion and appeared on another only after the district court entered two orders compelling him to do so. Although both turnover hearings were held *ex parte*, Schulze's continued avoidance of the judgment debt for over three years formed the only basis for the orders, and Schulze was aware both of his obligation on the debt and his avoidance of it. In fact, he attempted to create a secured interest in his own assets after the judgment had been entered against him and then asserted that his alleged interest in his assets shielded them from collection. We hold that no harm occurred when the district court failed to make the findings and conclusions concerning the facts and law that created the circumstances here. We overrule Schulze's first issue.

In his second issue, Schulze cites *Olivares v. Cauthorn*, 717 S.W.2d 431, 432 (Tex. App.—San Antonio 1986, no writ), to argue that, because the district court failed to make a record of the *ex parte* hearings, the record contains insufficient evidence on which to base the turnover orders. However, *Olivares* concerned the lack of a record concerning a hearing that resulted in a default judgment. *See id*. This case does not concern the propriety of the default judgment entered. Rather, the record here supports the fact that Schulze already had the default judgment entered against him and that he had not satisfied the judgment debt. Thus, the order only authorized action to collect the sums due on that earlier judgment. *See Barrera v. State*, 130 S.W.3d 253, 266 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The record in this case adequately supports the district court's decision to issue the turnover order.

8

Schulze further argues that the record lacks evidence that he owns the property listed in the order, that the property is nonexempt, or that the property is not subject to attachment by ordinary legal process. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a). To be valid, "a turnover order must be definite, clear, and concise to give the person to whom it is directed sufficient information as to his duties and should not be such as would call on him for interpretations, inferences, or conclusions." *Thomas*, 917 S.W.2d at 434; *see also Bergman*, 828 S.W.2d at 557. Cap Collection offered Schulze's "Commercial Security Agreement" and his deposition testimony as evidence with its motion for turnover relief. In the "agreement," Schulze listed his assets, including those of Schulze Chiropractic Center. We find it within the district court's discretion to rely on this evidence of assets to order the assets and receivables turned over to Cap Collection.

Moreover, on review we presume that the trial court acted within its authority and therefore could not have intended to divest Schulze of exempt property. *See Thomas*, 917 S.W.2d at 434. In addition, once a judgment creditor traces assets to the judgment debtor, a presumption arises that those assets are in the debtor's possession, and the burden shifts to the judgment debtor to account for the assets. *Dale v. Finance Am. Corp.*, 929 S.W.2d 495, 498 (Tex. App.—Fort Worth 1996, writ denied) (citing *Buller*, 806 S.W.2d at 226). Similarly, if a party claims that an asset is exempt, it is that party's burden to prove that it is exempt. *Id.* at 498-99 (citing *Jacobs v. Adams*, 874 S.W.2d 166, 167 (Tex. App.—Houston [14th Dist.] 1994, no writ), and *Rucker v. Rucker*, 810 S.W.2d 793, 796 (Tex. App.—Houston [14th Dist.] 1991, writ denied)). In this case, the order clearly specifies the property subject to turnover. Because we presume that the trial court acted

within its authority, we will read the order only to include non-exempt assets. *See Thomas*, 917

S.W.2d at 434.[5]  Thus, the burden rests on Schulze to show that any of the property at issue is

exempt. *See Dale*, 929 S.W.2d at 498.

Schulze further argues that he is "unable, through no fault of his own, to obtain a

reporter's record to show if any evidence was adduced that he owned the general classes of property

to be turned over."  The turnover order in this case is specific concerning the property to be turned

over.  The district court relied on his own deposition testimony and his "Commercial Security

Agreement" in ordering the turnover, both of which are contained in the clerk's record.  We find

specious his argument that he needs a more detailed court record to establish for himself that he

owns the property in question.  We overrule Schulze's second issue.

In his third issue, Schulze argues that the district court's order that the sheriff seize

the property in the turnover order is itself evidence that the property is subject to ordinary and legal

process and thus not subject to turnover relief.  *See* Tex. Civ. Prac. & Rem. Code Ann.

§ 31.002(a)(1), (b)(1), (c).  We fail to see the logic of Schulze's argument.  The statute in this case

requires both that the property at issue "cannot readily be attached or levied on by ordinary legal

process" and that the court may order the debtor to turn the property over to a designated sheriff.

*Id*. § 31.002(a)(1), (b)(1).  It includes orders which the trial court enters to enforce an order that has

been refused or disobeyed.  *See id*. § 31.002(c); *Sivley v. Sivley*, 972 S.W.2d 850, 860 (Tex.

---

[5]  Schulze also asserts that the Commercial Security Interest "creates no property interest in [him] subject to seizure and turnover."  Thus, he believes that the turnover order requires him "to guess at what interest, if any, he owns" in that agreement.  We will not trifle with absurdities.

App.—Tyler, 1998, no pet.). Cap Collection attempted to collect the judgment debt for three years before filing for turnover relief. Ordinary legal process has failed, and so the district court appropriately ordered the Bexar County Sheriff to seize or take possession of the property subject to the turnover order. We overrule Schulze's third issue.

### *Appointment of Receiver*

In his fourth issue, Schulze argues that the trial court abused its discretion in appointing a receiver because the record lacks evidence of the necessity of the appointment. However, the record contains evidence that Schulze avoided paying the judgment debt for three years, failed to appear at scheduled depositions until ordered twice by the district court to do so, and engaged in questionable actions and arguments to shield his assets. Given these circumstances, we find that the district court acted within its discretion in appointing a receiver. We overrule Schulze's fourth issue.

### *Constitutional Issues*

In his fifth issue, Schulze argues that the trial court's failure to provide prior notice and a hearing before the issuance of the turnover order under Section 31.002 violated his constitutional rights to due process and trial by jury even though the turnover statute does not require it. *See* U.S. Const. amend. XIV; Tex. Const. art. I, §§ 15, 19. Because Schulze presents both challenges in one argument attacking the constitutionality of the *ex parte* hearing and because he offers no arguments concerning the right to a jury trial separately from his due process arguments, we will consider both together. *See Sivley*, 972 S.W.2d at 859-61.

11

Due process of law requires that an individual is entitled to notice and hearing before being deprived of a property right. Due process does not require that a defendant who has been granted an opportunity to be heard and has had his day in court, should, after a judgment has been rendered against him, have a further notice and hearing before supplemental proceedings are taken to reach his property in satisfaction of the judgment against him. *Endicott Johnson Corp. v. Encyclopedia Press, Inc.*, 266 U.S. 285, 288 (1924). "[I]n the absence of a statutory requirement, it is not essential that the defendant be given notice before the issuance of an execution against his tangible property; after the rendition of the judgment he must take 'notice of what will follow,' no further notice being 'necessary to advance justice.'"[6] *Id.* Section 31.002 does not require that notice and a hearing be given. Thus, failure to provide prior notice and hearing before the issuance of a turnover order under section 31.002 does not compromise constitutional principles. *Thomas*, 917 S.W.2d at 433-34; *see also Ex Parte Johnson*, 654 S.W.2d 415, 418 (Tex. 1983) (stating in dicta that notice and hearing prior to issuance of the turnover order is not required); *Plaza Court, Ltd. v. West*, 879 S.W.2d 271, 276 (Tex. App.—Houston [14th Dist.] 1994, no writ) (holding that section 31.002 does not provide for notice to defendant in turnover proceedings).

---

[6] There is some question as to the continued vitality of *Endicott-Johnson Corp. v. Encyclopedia Press, Inc.*, 266 U.S. 285, 288 (1924), in light of the Court's subsequent ruling in *Griffin v. Griffin*, 327 U.S. 220, 232-33 (1946). In *Griffin*, the Court held that where a second judgment was based on a prior judgment entered without proper notice, the entry of the first judgment could not support the entry of the second judgment without adequate due process safeguards such as prior notice and an opportunity to be heard. 327 U.S. at 232-33. However, to the extent that the subsequent judgment obtained without notice was based on the part of the prior judgment for which prior notice had been given, the subsequent entry of judgment will be valid. *Id.* at 233-34; *see also Augustine v. McDonald*, 770 F.2d 1442, 1446 n.3 (9th Cir. 1985). Thus, *Griffin*'s limitations on the holding of *Endicott-Johnson* do not apply to this case.

In this case, section 31.002 allows a trial court to enforce a prior order that has been refused or disobeyed. *Thomas*, 917 S.W.2d at 434. The judgment against Schulze was entered after he failed to appear at the original hearing, of which he had notice. He knew the judgment was subject to collection, and the judgment afforded him "with notice that post-judgment proceedings would follow." *Merritt v. Harris County*, 775 S.W.2d 17, 21 (Tex. App.—Houston [14th Dist.] 1989, writ denied). Thus, we find no violation of due process rights in this case. In addition, no right to a jury trial attached because Schulze had no right to a hearing on the issue. We overrule Schulze's fifth issue.

### Attorney's Fees

In his sixth issue, Schulze argues that the trial court abused its discretion in awarding attorney's fees to Cap Collection because "the turnover order did not identify specific property to be turned over and a record of the evidentiary hearing is not available through no fault of" his own. We disagree.

In a turnover proceeding, the judgment creditor is entitled to recover reasonable costs, including attorney's fees. Tex. Civ. Prac. & Rem. Code Ann. § 31.002(e). In this case, Cap Collection attempted to collect on the judgment debt for three years, until it was valued at $1,128,086. It attempted on several occasions to depose Schulze to identify his assets and was required to draft an application for turnover relief and to appear in court twice. We have found both that the order is adequately specific to identify the property Schulze must turn over and that the record is sufficient in this case. As well, we note that the court awarded only $1,500 in attorney's

13

fees on a judgment worth $1,128,086. We find that the district court acted within its discretion in this case. We overrule Schulze's sixth issue.

## CONCLUSION

We have overruled Schulze's issues on appeal. We affirm the judgment of the district court.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   September 23, 2004

14