**Luella MERRITT, et al., Appellants,**

**v.**

**HARRIS COUNTY, Texas, et al., Appellees.**

**No. B14–87–527–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

June 29, 1989.

Rehearing Denied Aug. 10, 1989.

Carol Nelkin, Houston, for appellants.

Billy E. Lee, Ann Hardy, Houston, M.R. Carr, Humble, for appellees.

Before PAUL PRESSLER, DRAUGHN and ELLIS, JJ.

## OPINION

DRAUGHN, Justice.

Appellants Luella Merritt and Gayle Smith, individually and on behalf of those similarly situated, challenge the constitutionality of eviction procedures pursuant to writs of restitution issued by the justice courts of Harris County, Texas. The trial court found that certain private individuals and a moving and storage company violated appellants' constitutional rights, but refused to find liable Appellees Harris Coun-

ty, Constables Dick Moore, George N. Larkin, Bill Bailey, or Deputy Constable Ray Dodge. In three points of error, appellants assert the trial court erred in holding that: (1) state and federal procedural due process rights were not violated by appellees upon seizure of appellants' belongings; (2) state and federal substantive due process rights were not violated by appellees upon seizure of appellants' belongings; and (3) appellee Harris County was not liable for any constitutional deprivations suffered by appellants. We affirm the judgment of the trial court.

The underlying action was brought principally to test the constitutionality of the practice then employed by appellees, in conjunction with a private moving and storage company, of removing a tenant's person and belongings from a landlord's premises pursuant to the execution of a writ of restitution. The original petition alleged that the private moving and storage company, Padlock Storage, acting in concert with the constables' deputies according to official policy and custom and under color of state law, removed a tenant's property from the premises without any legal authority and without proper notice and hearing that the removal would occur. Appellants did not challenge the constitutionality of the forcible entry and detainer proceedings held in justice court, but instead focused their attack on the form of the writ of restitution itself, the manner of its execution by the constables, and the acquisition and enforcement of a purported lien exercised by the private storage company that stored appellants' property after execution of the writ.

After a temporary injunction hearing and a trial on the merits, the trial court found that appellants, and those similarly situated, were tenants on whom writs of restitution were served by the appellee constables' deputies. The testimony reflects that attempts were made to induce the appellants to voluntarily leave the landlords' premises before the writ of restitution was actually served. A printed form notice was posted on the door of the premises prior to execution of the writ advising the appellants to vacate within a specified period of time. If appellants failed to leave the premises, the constable's office engaged Padlock Storage, a private moving and storage company, to remove the personal property from the premises.

In this event, the deputy constables and the movers would arrive at the premises under the writ of restitution, and the movers would pack the belongings of appellants inside the premises. A written inventory of the property was made and a copy was then either attached to the return of the writ or filed in the constable's office as a record of the event. If appellants were present during execution of the writ, they were allowed to take with them perishables, some clothing, pets, and plants. However, once the belongings were packed, appellants were not allowed to interfere with the removal of their property by the movers. Appellants were given a business card identifying the private movers and informing them where the goods could be retrieved. If a tenant was not present, this business card was posted on the door of the premises.

The property was then placed in storage in the mover's warehouse and could be reclaimed only after payment of moving expenses and storage fees. If the property was not claimed within thirty days, it was advertised for sale and auctioned. The trial court held that the constitutional violations occurred at the time the warehousemen disposed of appellants' property. The trial court found that:

> the real evil inherent in the current practice is its unpredictability and complete subjugation of the tenant's property interest in their belongings to the whim or caprice of the particular *warehouseman*. The record is replete with instances where persons' belongings were disposed of without acceptable recourse to contest their sale and were ultimately sold without any statutory basis or legal process whatsoever. (emphasis added).

The trial court also relied upon undisputed evidence to find that the appellee constables and their deputies did not participate or authorize the actual sale or disposi-

tion of appellants' goods. Thus, the trial court found liability on the part of defendant Padlock Storage, Inc. and the individual warehousemen L.H. Singleton and M.A. Singleton, but refused to assess liability against the appellee constables or appellee Harris County.

In their first point of error, appellants assert that state and federal procedural due process rights were violated at the time appellants' property was seized during the evictions. Specifically, they allege that the seizure was a taking of property without notice and a hearing because: (1) the seizures were without consent; and (2) nothing in the notice or within the writ of restitution advised that upon eviction the property would be seized, entrusted to a private warehouseman, and either sold or "ransomed" to pay exorbitant storage charges. Further, appellants maintain that the trial court found that "the conduct of the deputy Constables constituted more than mere passive surveillance to keep the peace, but instead involved active participation and aid in the taking of [appellants'] property." Thus, according to appellants, it was error for the trial court to hold contrary to its own fact-finding that no taking of property occurred prior to the sale of the goods. Appellants maintain that

> [a]t a minimum, the tenant must be advised prior to the trial on right of possession that a judgment in favor of the landlord will result in issuance of a writ of restitution which will in turn result in the Constable's asserting dominion over the tenant's property by enlisting the services of a private warehouseman who will take possession of the goods and store them in his warehouse subject to the payment of moving and storage charges.

■ The eviction proceedings in the justice courts were not challenged by appellants either at trial or on appeal. The judgments, therefore, were final and afforded appellants with notice that post-judgment proceedings would follow. *Endicott–Johnson Corporation v. Encyclopedia Press, Inc.*, 266 U.S. 285, 288–90, 45

S.Ct. 61, 62–63, 69 L.Ed. 288 (1924); *Ex parte Johnson*, 654 S.W.2d 415, 418 (Tex. 1983). Further, the trial court found that appellants received notice prior to the execution of the writs of restitution advising appellants to vacate within a specified time. While no statute expressly authorizes the constables to remove the tenant's belongings from the premises, the right to restitution of the premises logically includes the right to have the property of the unlawful possessor removed. *See Tallwater v. Brodnax*, 137 Tex. 604, 156 S.W.2d 142 (Tex.Comm'n App.1941, opinion adopted).

■ Procedural due process, both state and federal, requires that notice and an opportunity to be heard be afforded to persons whose property rights are affected by governmental action. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The same due process analysis is required under either the Fourteenth Amendment or under Article I, § 19 of the Texas Constitution. *Price v. City of Junction*, 711 F.2d 582 (5th Cir.1983). A broad balancing test, used before property may be seized, requires that a judgment debtor be afforded certain protections against erroneous and arbitrary seizures. *Hering v. Norbanco Austin I, Ltd.*, 735 S.W.2d 638, 640 (Tex.App.—Austin 1987, writ denied). Adequate protections accommodate the respective interests of the creditor, the debtor, and the State. *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903; *Hering*, 735 S.W.2d at 640. To make this determination, we must weigh:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [State's] interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Mathews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. at 903.

■ We turn first to a description of the procedures of the writs of restitution and

thereafter consider the factors bearing upon the constitutional adequacy of these procedures.

The writ of restitution issues after a judicial determination that the landlord is entitled to possession and after the tenant is provided an opportunity to fully contest the restoration of the premises to the landlord. Once judgment is granted, the tenant is put on notice of what must naturally follow, that is, the removal of his person and property from the premises. *See Endicott–Johnson Corporation*, 266 U.S. at 288, 45 S.Ct. at 62; *Ex parte Johnson*, 654 S.W.2d at 418. Moreover, the tenant is given additional notice, which is posted on the premises, that the writ will be executed within a certain period if the tenant has not vacated the premises. Once this period expires, if the tenant still possesses the premises, the tenant's goods are removed by the private moving and storage company at the constables' direction. Tenants are allowed to remove pets, perishables, plants, and some clothing. A business card identifying the movers and the location where the goods are stored is given to the tenants or, if no one is present, the business card is posted on the door. All of the property seized is, at this stage, subject to immediate reclamation if storage charges and moving expenses are paid at the warehouse.

Competing interests were accommodated: first, the landlord regained his premises; second, the seizure avoided damages which might result from placing the goods on the street, *See Tallwater*, 156 S.W.2d 142; third, the tenants were given a full judicial hearing prior to the execution of the writ; fourth, the tenants were notified prior to the execution of the writ that the premises must be vacated before a certain period or the writ would be executed; fifth, the tenants' goods were, at this stage, stored in a covered warehouse protected from the elements; sixth, the tenants could immediately redeem their goods upon the payment of storage and moving expenses. Even though the trial court found abuses at the storage stage of the process, the trial court did not find a connection between the actions of the private warehouse-

men and the constables. The procedure for executing the writs of restitution adequately accommodated competing interests. We agree with the trial court that no constitutional purpose would be served by requiring further notice and hearing before the judgment's mandate to restore full possession to the landlord may be effected.

Appellants maintain that the only issue in a forcible entry and detainer action is the landlord's right to possession. *Young Women's Christian Association of Austin v. Hair*, 165 S.W.2d 238 (Tex.Civ.App.—Austin 1942, writ ref'd n.r.e.). They assert that notice is not thereby conveyed that appellants' belongings, including statutorily exempt property, would be seized and stored subject to sale. However, the notice provided by the forcible detainer action and the notice posted on the premises served to alert the tenants as to what naturally must follow. *Endicott–Johnson Corporation*, 45 S.Ct. at 62; *Ex parte Johnson*, 654 S.W.2d at 418; *Pitts v. Dallas Nurseries Garden Center, Inc.*, 545 S.W.2d 34, 37 (Tex.Civ.App.—Texarkana 1976, no writ). The fundamental requirement of procedural due process; that is, the opportunity to be heard at a meaningful time and place; does not always require the State to provide a hearing prior to the initial deprivation of property. *Parratt v. Taylor*, 451 U.S. 527, 540, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981). In this instance, appellants were given a full judicial hearing and a posted notice on the premises prior to execution of the writ. This is constitutionally adequate. Further, in weighing competing interests, it is evident that the safe and reasonable storage of appellants' property is far more desirable than placing the goods on the streets which risks theft, environmental damage, the violation of city ordinances, and infringement upon the neighborhood's quality of life. *See Tallwater*, 156 S.W.2d 142.

We overrule point of error one.

In their second point of error, appellants assert that their state and federal substantive due process rights were violated. They maintain that even if constructive notice that the property was to be seized was

found to exist, the tenants were nonetheless entitled to recover the property by paying reasonable storage charges. Because unreasonable fees were charged by the private warehousemen, appellants argue that the private warehousemen's constitutional violations are necessarily attributable to appellees. They argue that 42 U.S.C. § 1983 confers liability upon the constables and Harris County because they were intimately involved with the private warehousemen. According to appellants, "[b]ut for the decisions of the Constables to use Padlock and to prohibit tenants from removing their own belongings after Padlock was on the scene, this due process violation would not have occurred."

42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

█ In order to maintain a claim under 42 U.S.C. § 1983, appellants must show two essential elements: first, that appellees have deprived them of a right secured by the Constitution; and second, that this deprivation has occurred while the appellees were acting under color of law. *Menchaca v. Chrysler Credit Corporation*, 613 F.2d 507, 510 (5th Cir.1980). Under § 1983, actions taken by the private warehousemen can be subject to the same constitutional requirements and limitations placed upon governmental bodies. The trial court found that the conduct of the deputy constables constituted active participation and aid to the warehousemen in confiscating the goods. In this regard, however, the court found that the property deprivation was caused only by the private warehousemen and not the appellees. This was because the trial court found that the appellees were not involved in the final sale of the goods by the warehousemen nor involved in setting the storage charges.

█ Under § 1983, the constables can be liable for the subsequent deprivations if they are personally involved in the acts causing the deprivation of constitutional rights or if there is a causal connection between the act and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir.1983). A causal connection is established when a constitutional deprivation occurs due to the implementation of a wrongful policy. *Lozano*, 718 F.2d at 768.

█ We find that there is no causal connection between the constables' acts in executing the writs of restitution and the subsequent deprivation of constitutional rights caused by the private warehousemen. The constables were merely executing the writs of restitution which are orders of the court. A constable is charged with the execution of all process, warrants, and precepts which are directed to him, TEX. LOCAL GOV'T CODE ANN. § 86.021 (Vernon 1988), and the service of citations, TEX. R.CIV.P. 15–17. The constables are required to execute the writs of restitution, even though the writ might involve litigation. *See Henry S. Miller Company v. Evans*, 452 S.W.2d 426, 433 (Tex.1970). As officers of the court, they are under a duty to execute process and are not a tribunal to determine doubtful questions of fact. *See Henry S. Miller Company*, 452 S.W.2d at 434. They are considered under the control of the court in enforcing a court order. *Johnston v. Wright*, 85 S.W.2d 361, 363 (Tex.Civ.App.—Austin 1935, writ ref'd n.r. e.). Further, they are conferred with judicial immunity, subject to liability under § 34.061, TEX.CIV.PRAC.REM.CODE ANN. (Vernon 1986), when executing court writs so long as they in good faith and diligently execute the writ as provided by law and the Rules of Civil Procedure. TEX.CIV.PRAC. REM.CODE ANN. § 7.003 (Vernon 1986). § 34.061 places a duty upon the constables to keep securely all personal property which has been levied upon by the officers.

The property's removal and storage was a reasonable alternative to placing the

goods at risk in a public area while serving to deliver to the landlord exclusive possession of the premises. *See State Ex.Rel. Marsol Apartment Company v. Vannuci,* 68 Ohio App.2d 181, 428 N.E.2d 468, 470 (1980). Especially is this so in light of the statutory duty upon an executing officer to keep securely all personal property on which he has levied. TEX.CIV.PRAC.REM. CODE ANN. § 34.061 (Vernon 1986). Therefore, the actions in execution of the writs of restitution were actions of the court and accommodated the competing interests of the landlord, the tenant, and society. The subsequent, independent actions of the warehousemen were not so inextricably intertwined with the execution of the writs as to constitute state action. *See Jackson v. Metropolitan Edison Company,* 419 U.S. 345, 351, 95 S.Ct. 449, 453–54, 42 L.Ed.2d 477 (1974). The constables did not place their imprimatur on the private warehousemen's subsequent actions. *Jackson,* 419 U.S. at 357, 95 S.Ct. at 456–57. The second point of error is overruled.

In their third point of error, appellants assert the trial court erred in failing to hold Harris County liable for the constitutional deprivations caused by the warehousemen. Specifically, they assert that the constables are the final policymaking authorities for Harris County within their precincts regarding writs of restitution. They further argue that Harris County officially sanctioned or ordered the alleged impermissible conduct of the constables through the commissioners' court's acts or failure to act in establishing the policy for the execution of the writs.

▉ A county can be held liable for a constitutional tort if it caused the tort through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (U.S.1988), *citing Monell v. New York City Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Further, a county may be sued for constitutional deprivations caused by governmental custom enacted without for-

mal approval through the county's decision-making channels. *City of St. Louis,* 108 S.Ct. at 923. This means that a county can only be liable when its official policies cause its employees to violate another person's constitutional rights. *City of St. Louis,* 108 S.Ct. at 923.

▉ The identification of policymaking officials is a question of state law which may include valid local ordinances and regulations. It is not a question of federal law and it is not a question of fact. *City of St. Louis,* 108 S.Ct. at 923. The authority to make municipal policy is the authority to make final policy without any constraints on the official's discretionary decisions. *City of St. Louis,* 108 S.Ct. at 923. Whether an official has the power to make final policy is not dictated by the official's place in a hierarchical scheme. *Rhode v. Denson,* 776 F.2d 107, 109 (5th Cir.1985). In the instant context, Harris County Constables are elected according to precincts with a constituency that is not county wide. They are elected by the voters of a precinct, a subunit of the county, but have jurisdiction to serve process, make arrests, and carry out the duties of a peace officer throughout the entire county. TEX. LOCAL GOV'T CODE ANN. § 86.021 (Vernon 1988). They obtain funding for their office from the commissioners' court; yet, they can be removed from office only by a state district judge after a jury finding of incompetence, habitual drunkenness, or other causes defined by law. TEX. CONST. art. 5, § 24.

▉ In executing writs of restitution, Harris County Constables carry out a duty prescribed by the Texas constitution or the legislature. As an officer of the Court, they do not have the authority to define objectives in the execution of the court's writ. *See Lawyers Civil Process, Inc. v. State,* 690 S.W.2d 939, 943 (Tex.App.—Dallas 1985, no writ). Under Texas law, Harris County Constables are not policymaking officials of county government when performing their narrowly circumscribed duty to execute a writ of restitution. *Rhode,* 776 F.2d at 109–10. Even though they are elected officials, they do not hold full sway over

the tasks entrusted to them so as to constitute official policy making authority. Though they possess a limited range of discretion in executing a writ, their power to make and enforce policy in this area is constrained by the courts, the constitution, and the legislature. They are not given that range of discretion or choice that is at the core of the power to impose one's chosen policy for they do not define the objectives of a writ of restitution nor do they prescribe the excessive storage charges levied by the private warehousemen. *See Rhode*, 776 F.2d at 109.

Moreover, as discussed earlier, the constables' actions in executing the writs of restitution adequately accommodated competing interests and did not violate appellants' constitutional rights. No liability exists because no nexus was established between the constitutional violations occasioned by the sale of the property and the constables' actions in execution of a judicial writ.

■ Appellants have also failed to demonstrate a constitutional deprivation caused by a policy or custom which may be imputed to Harris County. The trial court found the commissioners' court was not made aware of the abuses in the disposition of the property. Further, the constables' actions cannot extend liability to Harris County as they are not policymaking officials of county government in this context, do not formulate county policy, and did not deprive appellants of due process.

We overrule appellants' point of error three and affirm the judgment of the trial court.