COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



CONSTABLE JACK F. ABERCIA AND
OLD REPUBLIC SURETY COMPANY,


 Appellants/Cross-Appellees,


v.



KINGVISION PAY-PER-VIEW, LTD.,


 Appellee/Cross-Appellant.
 §


 


§


 


§


 


§


 


§


 


 § 


No. 08-05-00020-CV
 


Appeal from the


County Court at Law No. 3

of Dallas County, Texas 


(TC# 03-03226-C) 



O P I N I O N

 Appellants/Cross-Appellees Constable Jack F. Abercia and Old Republic Surety
Company (collectively, "Appellants") appeal the trial court's Final Order Granting Motion to
Recover Full Amount of Judgment in favor of Appellee/Cross-Appellant Kingvision Pay-Per-View, Ltd. ("Kingvision"), in which the trial court found Appellants jointly and severally liable
for damages for failure to levy on the writ of execution issued on a default judgment pursuant to
Section 34.065 of the Texas Civil Practice & Remedies Code and also fined Constable Abercia
for contempt pursuant to Tex.Loc.Gov't Code Ann. § 86.024. Appellants bring six issues on
appeal, in which they challenge the trial court's jurisdiction and the legal and factual sufficiency
of the trial court's findings that they violated Sections 34.064 and 34.065 of the Texas Civil
Practice & Remedies Code and Section 86.024 of the Local Government Code. Appellants also
argue Constable Abercia proved, as a matter of law, that he was entitled to good faith immunity
under Tex.Civ.Prac.& Rem.Code Ann. § 7.003 and to judicial immunity under common law
and that, as a matter of law, Old Republic Surety Company ("Old Republic Surety") was not
jointly and severally responsible for the judgment beyond the penal sum of the bond. By cross-appeal, Kingvision asserts that the trial court's September 8, 2004 order is the valid order, not its
January 14, 2005 order, which is the subject of this appeal. Kingvision also argues the trial court
erred by awarding it less than the full amount of the underlying judgment debt.

 For the reasons stated below, we affirm the trial court's judgment in part, reverse in part,
and remand the case to the trial court for further proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

 On June 30, 2003, Kingvision obtained a default judgment against Mario Antonio
Baltazar, individually, and d/b/a Gloria's, d/b/a Gloria's Bar, and d/b/a Gloria's Nite Club in the
amount of $150,175. On August 20, 2003, the county clerk issued a ninety-day writ of execution
for the judgment. On or about August 27, Kingvision sent the writ to Constable Abercia of
Precinct 1 of Harris County, Texas, along with payment of the $60 service fee and public records
information showing Mr. Baltazar as owner and operator of Gloria's Nite Club, located at 8810
Jensen Drive, Houston, Texas. An accompanying letter instructed Constable Abercia to "seize
all cash and coin" and requested service of the writ "on a Friday or Saturday, after 11:00 p.m., or
at any time likely to maximize recovery." On September 4, the Constable's office sent a letter to
Mr. Baltazar, notifying him to contact their office immediately to discuss payment of the
judgment and stating, "[i]f we do not hear from you immediately, we will proceed to collect this
judgment by SEIZING any non-exempt property found belonging to you according to law."

 On September 25, Deputy Kathryn Inman went to Gloria's and attempted to make a
personal demand on the debtor, but found the establishment was closed, and instead left a
business card on the door. On October 1, Andrew Korn, Kingvision's attorney, sent an inquiry
letter requesting the Constable's office execute the writ in the evening hours and to make more
than one attempt to satisfy the judgment. On October 3, Mr. Korn sent a fax transmittal to
Sergeant Albert Lui, requesting that the deputies levy on the debtor's cash and coin, but
instructed them that until otherwise requested, not to levy on any other property in connection
with the writ of execution. At 10 p.m. on the same date, Deputy Inman and three other deputies
went to Gloria's and seized the money found in the cash register of the business, which totaled
$112.50. By fax transmittals on October 7 and November 9, Mr. Korn informed Sergeant Lui
that U.S. Marshals seized $648.75 in cash and coin at Gloria's on October 4 and over $500 in
cash, coin, and cigarettes on November 8. In the November 9 correspondence, Mr. Korn
requested that the Constable's office continue to execute the writ by returning to Gloria's to seize
cash and coin and/or executing a "Keeper's Levy." On November 10, Mr. Korn sent another fax
transmittal, providing the Constable's office with public record information about real property
and vehicles owned by Mr. Baltazar. Mr. Korn suggested the Constable go to the residence and
seize non-exempt property such as cash or firearms in excess of two and to consider levying any
non-exempt property at Gloria's such as stereo speakers, televisions, and other electronic
devices, if the storage and sales fee would not exceed the likely sale price of the items. On
November 19, 2003, the Constable's office issued a check for $107.01 to Kingvision and
returned the writ to the court as expired. The file-stamped copy of the writ indicates the court
received the returned writ on December 1.

 On March 18, 2004, Kingvision filed its Motion to Recover Full Amount of Judgment,
requesting the court command Constable Abercia and his surety, Old Republic Surety, to pay
Kingvision the full amount of the judgment debt in the case, plus interest and costs, pursuant to
Tex.Civ.Prac.& Rem.Code Ann. §§ 34.064, 34.065. Over several days, the trial court
conducted a hearing on the motion. On September 8, 2004, the trial court entered an order
granting Kingvision's motion, finding Appellants jointly and severally liable for the full amount
of the judgment debt, plus interest and costs, and imposed a fine of $100 on Constable Abercia
for contempt. Subsequently, Constable Abercia, joined by Old Republic Surety, filed a motion to
modify or reform the judgment or alternatively to grant a new trial. On December 22, 2004, the
trial court vacated the September 8 order. On January 14, 2005, the trial court signed the Final
Order Granting Motion to Recover Full Amount of Judgment. The final order held Appellants
jointly and severally liable to Kingvision for $109,690.98, plus interest and costs, and imposed a
fine of $100 on Constable Abercia for contempt. On February 11, 2005, Old Republic Surety
filed a motion to reform the final order, arguing that it was only liable for the amount of the penal
sum of its bond, which was in the amount of $1,500. After a hearing, the trial court denied Old
Republic Surety's motion. This appeal and cross-appeal now follow.

DISCUSSION

WRIT OF EXECUTION

 Execution is governed by rule and statute. Kuo Kung Ko v. Pin Ya Chin, 934 S.W.2d
839, 841 (Tex.App.--Houston [14th Dist.] 1996, no writ); Hickey v. Couchman, 797 S.W.2d 103,
107 (Tex.App.--Corpus Christi 1990, writ denied). Rule 637 imposes a duty on the sheriff to
"proceed without delay to levy . . . upon the property of the defendant found within his county
not exempt from execution . . . ." (1)
 See Tex.R.Civ.P. 637. Section 34.065 of the Texas Civil
Practice and Remedies Code provides sanctions if the sheriff fails or refuses to execute upon the
debtor's non-exempt property. See Tex.Civ.Prac.& Rem.Code Ann. § 34.065 (Vernon 1997). 
When a judgment creditor asks that the constable be liable for non-execution, he or she must
plead a prima facie case alleging: (1) an execution based on a valid judgment issued and
delivered to the sheriff; (2) property of the debtor subject to the execution in the county where
the sheriff had the writ; (3) failure of the sheriff to seize the non-exempt property; and (4) an
unsatisfied judgment. Ko, 934 S.W.2d at 841; Hickey, 797 S.W.2d at 107-108, citing Henry S.
Miller Co. v. Evans, 452 S.W.2d 426 (Tex. 1970). Once a prima facie case has been pled, the
burden shifts to the sheriff to disprove an element of the plaintiff's case or prove one of several
defenses of mitigation, such as proof that the fair market value of the property was less than the
underlying judgment. Ko, 934 S.W.2d at 841; Hickey, 797 S.W.2d at 108. In addition, under
Section 7.003 of the Texas Civil Practice and Remedies Code an officer is not liable for damages
if the officer executes the writ in good faith and uses reasonable diligence in performing his
official duties. See Tex.Civ.Prac.& Rem.Code Ann. § 7.003 (Vernon 2002).

NOTICE

 In Issue One, Appellants argue the trial court lacked jurisdiction over the action because
Kingvision failed to give notice of its suit against a county official in his official capacity as
mandated by Tex.Loc.Gov't Code Ann. § 89.0041 (Vernon Supp. 2006). Appellants assert
that since notice to governmental entities and officials sued in their official capacities is a
jurisdictional requisite under Tex.Gov't Code Ann. § 311.034, the trial court lacked subject
matter jurisdiction over the proceeding and this Court must vacate the court's judgment and
dismiss the action. We reject Appellants' argument for two reasons.

 First, Section 89.0041 is not applicable because this action was a statutory proceeding
brought pursuant to Tex.Civ.Prac.& Rem.Code Ann. §§ 34.064 and 34.065, not a 

"suit" against a governmental entity. See Tex.Civ.Prac. & Rem.Code Ann. § 34.065; see also
Hickey, 797 S.W.2d at 107 n.1. The motion was not a new suit, but rather a post-judgment
proceeding in the initial suit by which the judgment was gained and thus, the trial court
necessarily takes its jurisdiction from the underlying suit. See Evans v. Henry S. Miller Co., 413
S.W.2d 954, 955-56 (Tex.Civ.App.--Austin 1967, no writ); see, e.g., McLane v. Kirby & Smith,
54 Tex.Civ.App. 113, 117, 116 S.W. 118, 119 (1909)("[j]urisdiction over attachment
proceedings is part of the general jurisdiction conferred on the courts in which they are
cognizable").

 Second, effective September 1, 2005, the Legislature made "[s]tatutory prerequisites to a
suit, including the provision of notice . . . jurisdictional requirements in all suits against a
governmental entity." Tex.Gov't Code Ann. § 311.034; Act of May 25, 2005, 79th Leg., R.S.,
ch. 1150, § 1, 2005 Tex. Gen. Laws 3783, 3783 (establishing effective date); see Tex.Gov't
Code Ann. § 311.022 (Vernon 2005)("A statute is presumed to be prospective in its operation
unless expressly made retrospective."). Kingvision filed its motion to recover full amount of
judgment on March 18, 2004 and the court's final order granting that motion was signed January
14, 2005. Prior to the change in the law, failure to comply with analogous notice provisions in
the Code did not deprive a court of subject matter jurisdiction. See Univ. of Tex. Sw. Med. Ctr. at
Dallas v. Loutzenhiser, 140 S.W.3d 351, 364-65 (Tex. 2004)(discussing notice requirements of
Tex.Civ.Prac.& Rem.Code Ann.§ 101.101). Likewise, failure to give notice of a claim
pursuant to Section 89.0041 would not have deprived the trial court of jurisdiction over this
action. See id. at 362. Thus, even assuming that Section 89.0041 applied to this action, we could
nevertheless find that the change in the law would not apply to this case because of its effective
date. Issue One is overruled.

SUFFICIENCY POINTS

 In Issues Two through Five, Appellants challenge the legal and factual sufficiency to
support the trial court's findings of fact and conclusions of law. By their Issues Two through
Five, Appellants challenge the following findings of fact and conclusions of law:

. . .


 FF5. Mario Antonio Baltazar, Defendant and judgment debtor ("Defendant") had
property subject to execution (i.e. ownership of non-exempt assets) in Constable
Abercia's Precinct when Constable Abercia had the Writ.

 

 FF6. Constable Abercia failed to seize Defendant's non-exempt property.

 

 FF7. Constable Abercia failed to levy on property subject to execution.

 

 FF8. Constable Abercia refused to seize Defendant's non-exempt property.

 

 FF9. Constable Abercia refused to levy on property subject to execution.

 

 FF10. Levy could have taken place.

 

 FF11. Constable Abercia was aware of Defendant's non-exempt assets. 
Constable Abercia was able to seize these assets. However, Constable Abercia
did not do so.

 

. . .


 FF13. The full amount of the debt is $152,675.00.

 

 FF14. Plaintiff was injured by Constable Abercia's failure to execute in the
amount of $109,690.98. Plaintiff suffered damages in the amount of $109,690.98
as the proximate result of Constable Abercia's failure to levy.

 

. . .

 

 FF16. Constable Abercia and Old [Republic] Surety failed to identify any
property of Defendant that was exempt from execution.

 

. . .


 CL3. Constable Abercia violated Tex.R.Civ.P. 621.

 

 CL4. Constable Abercia violated Tex.R.Civ.P. 636 & 637.

 

 CL5. Constable Abercia violated Tex.R.Civ.P. 651 & 654.

 

 CL6. Constable Abercia neglected and refused to return a writ of execution as
required by law and made a false return on a writ of execution. Therefore,
Constable Abercia and Old [Republic] Surety are liable to Plaintiff for the full
amount of the debt, plus interest and costs pursuant [to] Tex.Civ.Prac. & Rem.
Code § 34.064. 

 

 CL7. Constable Abercia failed and refused to levy on property subject to
execution and the levy or sale could have taken place. Therefore, Constable
Abercia and Old [Republic] Surety are liable to Plaintiff for the full amount of the
debt, plus interest and costs pursuant to Tex.Civ.Prac.& Rem.Code § 34.065. 

 

 CL8. Constable Abercia both failed and refused to execute and return according
to law a process, warrant or precept lawfully directed and delivered to him. 
Plaintiff was the person injured by Constable Abercia's failure and refusal. 
[Citation omitted]


 CL9. Constable Abercia failed to use due diligence regarding the Writ. Constable
Abercia was neither careful nor persistent in effort.

 

 CL10. Constable Abercia did not use reasonable diligence in performing his
official duties.

 

 CL11. Constable Abercia did not execute the Writ in good faith.

 

 CL12. Constable Abercia willfully disobeyed the command of the Writ. This
disobedience was not justified or excused. 

 

 CL 13. Plaintiff's claims are not barred, in whole or in part, by any and all of the
defenses plead by Constable Abercia and Old [Republic] Surety (e.g., sovereign
immunity, official immunity and judicial immunity, etc.).


Standards of Review

 Findings of fact in a bench trial have the same force and dignity as a jury's verdict upon
questions and are reviewed for legal and factual sufficiency of the evidence by the same
standards. Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996); Anderson v. City of Seven Points,
806 S.W.2d 791, 794 (Tex. 1991). We review the trial court's legal conclusions de novo. BMC
Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).

 In our review we consider the evidence in a light that tends to support the jury's finding
and disregard all evidence and inferences to the contrary. Southwest Key Program, Inc. v. Gil-Perez, 81 S.W.3d 269, 274 (Tex. 2002). We will sustain a no-evidence challenge only when: (1)
the record discloses the complete absence of a vital fact; (2) the court is barred by rules of law or
of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence
offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes
conclusively the opposite of the vital fact. Marathon Corp. v. Pitzner, 106 S.W.3d 724, 727
(Tex. 2003). The evidence is no more than a scintilla "[w]hen the evidence offered to prove a
vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence . . .
." Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla exists when
the evidence "rises to a level that would enable reasonable and fair-minded people to differ in
their conclusions." Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994).

 When appealing the legal sufficiency of the evidence supporting an adverse finding on
which the party had the burden of proof, the appellant must show that the evidence establishes, as
a matter of law, all vital facts in support of the issue. Dow Chemical Co. v. Francis, 46 S.W.3d
237, 241 (Tex. 2001); Anderson, 806 S.W.2d at 794. In reviewing a "matter of law" challenge,
we must first examine the record for evidence that supports the finding, then we will examine the
entire record to determine if the contrary proposition is established as a matter of law. Francis,
46 S.W.3d at 241. The point of error should be sustained only if the contrary proposition is
conclusively established. Id.

 When reviewing the factual sufficiency of the evidence supporting an adverse finding
upon which the party did not have the burden of proof, the appellant must show that the evidence
is insufficient to support the finding. Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). In
our review, we may not substitute our own judgment for that of the trier of fact nor pass upon the
credibility of the witnesses. See Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex.
1998); see also GTE Mobilnet of S. Tex. v. Pascouet, 61 S.W.3d 599, 615-16 (Tex.App.--
Houston [14th Dist.] 2001, pet. denied)(trier of fact is the sole judge of the credibility of the
witnesses and the weight to be given to their testimony). After considering and weighing all the
evidence, we set aside the verdict only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Ellis, 971 S.W.2d at 406-07; Pool v. Ford Motor
Co., 715 S.W.2d 629, 635 (Tex. 1986). When appealing the factual sufficiency of the evidence
supporting an adverse finding on which the party had the burden of proof, the appellant must
show that the adverse finding is against great weight and preponderance of the evidence. 
Southwestern Bell Tel. Co. v. Garza, 164 S.W.3d 607, 620-21 (Tex. 2004); Francis, 46 S.W.3d
at 242.

Evidence

 Deputy Kathryn Inman testified that she received the writ on September 4 and the same
day sent out a "demand letter," to which she received no reply. On September 25 at 4:15 p.m.,
Deputy Inman went to Gloria's to make a personal demand and to try to work something out or
get payment from Mr. Baltazar. However, the business was closed, so she left a business card on
the door. According to Deputy Inman, she had a conversation with Mr. Korn, in which they
discussed the fact that he wanted to seize cash and coin only. It was Deputy Inman's
understanding that Mr. Korn in all his letters from August 27 to October 3, had instructed them
not to seize anything other than cash and coin. Deputy Inman also recalled discussing the
problem with execution being scheduled in the evening and told Mr. Korn he would have to
speak with Sergeant Lui because it would involve overtime. She explained that most executions
and levies are done about noon--during the daytime so that the defendant has the opportunity to
pay while the banks are open.

 On October 3, Deputy Inman and three other deputies went to Gloria's at 10 p.m. At
Gloria's, one deputy watched the front door while Deputy Inman and Deputy Eddy Valderrama,
serving as a translator, went behind the bar. The fourth deputy stood watch over Deputies Inman
and Valderrama because the nightclub is in a very bad part of town. Deputy Inman described the
establishment as a "low income bar" that only sells beer. Property in the bar consisted of old
tables, chairs, bar stools, some pool tables, a cigarette machine, a jukebox, and a bandstand. The
furnishings looked very cheap, and according to Deputy Inman, nothing looked like it would
bring $154,000 at auction. Deputy Inman also noted that the Harris County Appraisal District
valued the entire establishment at $17,000, which she said would not have made a dent in the
judgment since they would only get ten cents on the dollar at auction. That night the deputies
stayed at Gloria's for an hour and seized $112 from the cash register and found no other money. 
Deputy Valderrama also called Mr. Baltazar, who stated the only money that was in the bar was
what was in the register.

 According to Deputy Inman, the writ of execution is a peaceful process and it is against
the law for the deputies to break the locks on the pool table or vending machine. The only way
they could take the cash out of the machines was to seize them intact after first determining that
they belonged to the debtor. Deputy Inman stated that Mr. Korn never mentioned the vending
machines or pool tables. She also testified that they do not usually take cigarettes. With regard
to Mr. Korn's November 10 letter, in which he mentioned seizing property from the defendant's
home, Deputy Inman stated she never received a copy of that letter because it was addressed to
Jim Savage with the County Attorney's office. Even if she had been aware of the letter, nothing
in it indicated to her that she could seize that property. Deputy Inman's research showed that the
address mentioned was a homestead and of the two vehicles mentioned, Mr. Baltazar had sold
one of them. (2) She was also not furnished any information about possible non-exempt firearms. 
The November 10 letter also mentioned seizing property in Gloria's that would not exceed the
storage costs, but Deputy Inman did not recall seeing any property in Gloria's that would not
exceed the storage costs. Furthermore, Deputy Inman testified that even if she had received the
letter, the writ would have expired in ten days; thus, it would have been too late to seize the
property and hold the property for ten days before a constable sale. On cross-examination,
Deputy Inman explained that on a ninety-day writ, unless they had worked out a plan with the
defendant to make multiple payments, they only levy one time before returning the writ to the
court. In this case, Deputy Inman held the writ and waited for instructions to go out again, but
Sergeant Lui never told her to go back again. Deputy Inman maintained that by the time Mr.
Korn was requesting personal property on November 10, the deputies would not have had time to
go back to seize the property before the writ expired.

 Mr. Korn testified about his correspondence and requests to the Constable's office. Mr.
Korn explained that on October 1, he sent a letter to the Constable explaining his dissatisfaction
with their lack of action on the writ of execution. In response, Mr. Korn was instructed to
contact Sergeant Lui. In a follow-up message, Mr. Korn implored Sergeant Lui to stay on
schedule for execution of the writ on October 3 because he knew the U.S. Marshals would be
returning on October 4 to execute on a federal judgment. In a subsequent conversation, Sergeant
Lui told Mr. Korn that he was not going to take any real property if he went out on October 3
because he did not have his bondsmen or mover ready, but if instructed to take cash and coin, he
would still go out. Per Sergeant Lui's instruction, Mr. Korn sent the October 3 fax, requesting
the levy on the debtor's cash and coin only. After Sergeant Lui told him that they seized only
$112.50, Mr. Korn sent the sergeant receipts from the U.S. Marshals' seizures, showing there
was money available every night, and on November 9, he asked the Constable's office to exercise
diligence in the service of the writ by, for example, returning to Gloria's to seize additional cash
and coin or employing a keeper's levy.

 By that point, Sergeant Lui had referred the matter to the County Attorney's office. Mr.
Korn had a conversation with Mr. James Savage, who told him that it was their position that they
did not have to go out to that establishment unless they were reasonably likely to satisfy the
judgment. Mr. Savage told him to identify some property and in response, Mr. Korn sent the
November 10 fax, in which he suggested they go to the debtor's home to see what property he
had that was non-exempt and that they take items such as televisions, speakers, and other
electronic devices from Gloria's. Despite Mr. Korn's November 10 letter, the deputies never
make any other attempts to execute on the judgment and instead, issued a check for $107 on
November 12 and never went back.

 On cross-examination, Mr. Korn admitted that he never identified $154,000 worth of
assets at Gloria's. Mr. Korn did not know who owned the jukebox or the pool tables and he did
not specifically tell the deputies to take cigarettes. However, Mr. Korn maintained that he asked
the Constable to take personal property like the vehicles and electronic equipment. Mr. Korn
also maintained that he had no duty to determine whether personal property, like the car, was
exempt or non-exempt, to give any direction to the Constable, or designate property for the
Constable to levy on.

 Sergeant Albert Lui testified that he was the supervisor in charge of the writ division for
Constable Abercia's office. He explained that executions are normally done during the day
because the defendants can go to the bank and pay the debt while the banks are open. Sergeant
Lui stated that a lot of times they will make a demand on the debt and then will work something
out and the defendant will go to the bank and get a check. However, in the past they would go
out to a bar at night and seize the assets. According to Sergeant Lui, he told Mr. Korn that they
were going to do the whole levy, but Mr. Korn elected not to do so. Prior to the November 10
letter, Mr. Korn never requested that they seize any property other than cash and coin. Sergeant
Lui explained that the deputies went to Gloria's only one time because if there is a lot of
merchandise or inventory, they will seize it all at one time, but if no other assets are available,
then they only go to the location one time. If they find some assets or the plaintiff finds some
through post-judgment discovery, then they will go to a second location if it is available. As far
as Sergeant Lui knew, there were no other assets to seize after they went to Gloria's one time. 
Mr. Korn had suggested that he conduct a keeper's levy, where he would put a deputy at the door
and collect money from patrons as they came into the bar, but Sergeant Lui was not familiar with
that and so he talked with Mr. Savage who also was unfamiliar with that method. Sergeant Lui
recalled Mr. Korn telling them to go out there just to seize as much cash and coin as they could
and that he did not want to put them out of business.

 On cross-examination, Sergeant Lui testified that Deputy Inman's return of service in this
case was accurate even though it stated nothing about looking for assets during the October 3
execution of the levy. As for why they did not go to the debtor's house to made a demand on
him or look for assets there, Sergeant Lui stated that they did not have Mr. Korn's November 10
correspondence, which was addressed to Jim Savage. Indeed, at trial was the first time Sergeant
Lui saw the November 10 letter, although he stated Mr. Savage might have given it to Deputy
Inman.

 Deputy U.S. Marshal George Hephner testified that he is assigned to the civil section in
Houston and has served writs of execution on at least 75 establishments in the past year. Deputy
Hephner had executed writs on Gloria's several times and had seized money at that location. On
some of the occasions, other law enforcement officers, specifically, TABC and Houston police,
come with them so that they can continue to levy if illegal activity is occurring. Deputy Hephner
explained that Houston police wanted to go to Gloria's with them because they felt it was full of
drugs and TABC agents wanted to go along to check for violations of license requirements. The
first U.S. Marshal team that executed a writ at Gloria's in April 2003 seized almost $1,900 from
the cash registers, change purses, coins in the pool table, and the owner's person. At Mr. Korn's
request, they went a second time on May 31 and recovered $421. Between April 2003 to
November 22, 2003, the U.S. Marshals went out to Gloria's seven times. They recovered only
$421 on May 31 because the employees were hiding money from them. On the night of
November 22, they employed a "double back," hitting the location twice in one night. While at
Gloria's they seized money from a jukebox and a pool table. Deputy Hephner explained they
first request that someone unlock the jukebox, and if it is not unlocked, they will pry it open. In
their first levy on Gloria's, they broke the locks on the pool tables and gaming machines after
employees refused to tell them who owned the property. The marshals then took the money and
left their card with instructions for the owner of that property to contact them. They have also
taken cigarettes from Gloria's. Deputy Hephner testified that he never identified assets at
Gloria's that would have been worth $154,000.

 Captain Cecil B. Lacey, division supervisor over civil and writs for Constable Precinct 4
of Harris County, testified that his precinct is one of the largest precincts and has the heaviest
loads in the county. The civil process department conducts most of the levies during its normal
business hours, 8 to 5 Monday through Friday, in order to avoid incurring extra expenses and
storage costs. In Captain Lacey's experience, multiple trips to a location to do a levy occur under
circumstances where there was so much property that it could not be seized in one day. 
According to Captain Lacey, if he was in a situation in which there was a $150,000 judgment, but
when he went out to levy he only recovered $112, there would have to be extenuating
circumstances to warrant returning a second time. In such a case, he would ask the plaintiff or
plaintiff's counsel for direction or assistance because otherwise the execution would not be
worthwhile. Captain Lacey would not break the locks on a vending machine during a levy
because that would be a criminal violation. He would also not go beyond the command of the
writ. Captain Lacey stated that it was not worthwhile to seize cigarettes because of the
restrictions on buyers and the extra storage costs and inventory. Captain Lacey believed that
Constable Abercia's office could have been very well justified in not wanting to go to Gloria's
again because there was not anything there. In his experience, only a small percentage of
judgments are satisfied, particularly executions on personal property.

 Lieutenant Frank Bromley, with the writ section of the Dallas County Constable's Office,
Precinct 1, testified that if he were in a situation where there was a judgment for $150,000 on a
writ of execution and he was asked to go to a bar or tavern at night and he only recovered $112
and had no reasonable expectation that more would be recovered, he would not make successive
trips to the location. Lieutenant Bromley explained that in his office, they send a demand letter
to the defendant and after no response, they go out and try to collect on the judgment. They work
the executions in the order they receive them. They have one or two writ officers in their office
and a backlog of about a hundred writs. If they collected only $112, they would return the writ
showing that amount as collected and return it nolo bono unless there was a turn over order or
post-judgment discovery that they could go out and levy on. Lieutenant Bromley has never
broken the locks on a vending machine on a writ of execution because it could be leased
property. If he were provided information from plaintiff's attorney about the defendant's
vehicles, his procedure would be to check the registration information on the vehicles and then
talk to the defendant to determine whether that property was exempt.

Violation of Section 34.065

 In Issue Two, Appellants challenge the trial court's finding of a violation of Section
34.065, arguing (1) there is no evidence or factually insufficient evidence to support a finding
that Constable Abercia failed or refused to levy under the writ; (2) no evidence or factually
insufficient evidence of any property owned by the debtor upon which Constable Abercia could
have levied; and (3) the damage award was arbitrary and not supported by legally or factually
insufficient evidence, particularly since Kingvision was not injured by the alleged failure to
execute.

 With regard to sub-point one, Appellants argue that Kingvision failed to establish a prima
facie case under Section 34.065, pointing to Sergeant Lui's testimony that the deputies were
specifically instructed to seize only cash and coin and they intended to levy once if no other
assets were available. Appellants also point out that Deputy Inman did not receive the November
10 letter that gave information about Mr. Baltazar's vehicles and requesting that they execute on
the non-exempt property at Gloria's. Deputy Inman also believed that regardless, it would have
been too late to levy on that identified property because the writ was set to expire on November
17, 2003. The evidence in the record, however, shows that Kingvision initially requested that the
deputies seize only cash and coin, but later during the life of the writ, requested on November 9
that the deputies return to seize additional cash and coin and on November 10 that they levy on
non-exempt property at Gloria's. Despite the deputies duty to levy on and seize property subject
to execution, which had been identified by Kingvision, Appellants refused to do so. Indeed,
Deputy Inman's testimony about the Constable's office procedure of levying only one time
before returning a ninety-day writ unless they arranged a multiple payment plan with the
defendant, squarely contradicts the command of a writ of execution, which clearly imposes a
duty on the constable to levy anew where the execution does not satisfy the judgment. See
Tex.R.Civ.P. 637, 651. In sub-point two, Appellants contend that Kingvision failed to prove the
existence of non-exempt executable property, thus there was no evidence of property which was
executable that was not executed on by Constable Abercia. As mentioned above, Kingvision did
identify property of the defendant subject to execution during the life of the writ, therefore, this
contention is without merit. We conclude there was legally and factually sufficient evidence to
support the trial court's findings Nos. 5-11.

 In their third sub-point, Appellants argue that the trial court's damage award is arbitrary
and not supported by legally or factually sufficient evidence, specifically challenging the trial
court's finding No. 14 that Kingvision was injured by Constable Abercia's failure to execute in
the amount of $109,690.98 and that Kingvision suffered damages in that amount as the
proximate result of the failure to levy. Under Section 34.065, if an officer fails or refused to levy
on property subject to execution and the levy could have taken place, the officer and his sureties
are liable for the full amount of the debt, plus interest and costs. See Tex.Civ.Prac.&
Rem.Code Ann. § 34.065. However, if the officer can establish, for example, that the plaintiff
was not injured by the failure to execute, that the defendant was insolvent, or that the defendant's
assets were exempt, there is generally no recovery. Ko, 934 S.W.2d at 841; Hickey, 797 S.W.2d
at 107-08 (the most important defense the Court has read into 34.065 is that the plaintiff was not
injured by the failure to execute). If there was non-exempt property that could have been seized,
then the officer is liable only to the extent of the value of the non-exempt property. Ko, 934
S.W.2d at 841; Hickey, 797 S.W.2d at 108. To establish this mitigation defense, the officer must
show that the market value of the defendant's non-exempt property is less than the amount of the
underlying judgment. Hickey, 797 S.W.2d at 108. In this case, Appellants failed to plead or
prove a defense of mitigation or to identify property that had been designated as non-exempt by
Mr. Baltazar. See Tex.Civ.Prac. & Rem.Code Ann. § 34.065; Ko, 934 S.W.2d at 841. Because
Appellants failed to meet their burden in establishing a mitigation defense, the trial court did not
err in concluding that Constable Abercia and Old Republic Surety were liable for Constable
Abercia's failure to execute the writ. (Conclusion of Law No. 7). Further, there was legally and
factually sufficient evidence to support findings No. 14 and No. 16. Issue Two is overruled.

Violation of Section 34.064

 In Issue Three, Appellants argue the trial court erred in holding Constable Abercia liable
under Tex.Civ.Prac.& Rem.Code Ann. § 34.064 because the issue was never plead or tried and
because neither legally nor factually sufficient evidence support the trial court's finding or
conclusion. Conclusion No. 6 states, "Constable Abercia neglected and refused to return a writ
of execution as required by law and made a false return on a writ of execution. Therefore,
Constable Abercia and Old [Republic] Surety are liable to Plaintiff for the full amount of the
debt, plus interest and costs pursuant [to] Tex.Civ.Prac. & Rem. Code Ann. § 34.064." Despite
issuing this challenged conclusion of law, the trial court did not find Appellants liable under
Section 34.064. Rather, the trial court ordered that Kingvision recover against Constable Abercia
and Old Republic Surety, "pursuant to Tex. Civ. Prac. and Rem. Code 34.065 (Failure to Levy or
Sell)." Because we conclude the evidence was legally and factually sufficient to support the trial
court's finding of liability under Section 34.065, we overrule Issue Three.

Contempt Finding under Section 86.024

 In Issue Four, Appellants argue that because Constable Abercia's deputies did not fail or
refuse to execute Kingvision's writ, the trial court's finding of contempt under Section 86.024 of
the Texas Local Government Code (Conclusions of Law No. 8 and No. 12) was in error. Section
86.024 provides:

 If a constable fails or refuses to execute and return according to law a process,
warrant, or precept that is lawfully directed and delivered to the constable, the
constable shall be fined for contempt before the court that issued the process,
warrant, or precept on the motion of the person injured by the failure or refusal. 
Tex.Loc.Gov't Code Ann. § 86.024 (Vernon 1999).


Relying on their arguments as set forth in Issues Two and Three, Appellants assert that the trial
court's contempt order is not supported by evidence because Constable Abercia did not fail or
refuse to execute Kingvision's writ. As discussed above in our disposition of Issue Two, there
was legally and factually sufficient evidence to support the trial court's findings related to
Constable Abercia's failure to levy upon defendant's property subject to execution. Therefore,
there was evidence to support the trial court's contempt order under Section 86.024. Issue Four
is overruled.

Good Faith Immunity and Judicial Immunity

 In Issue Five, Appellants contend Constable Abercia proved, as a matter of law, that he
was entitled to good faith immunity under Tex.Civ.Prac. & Rem.Code Ann. § 7.003 and to
judicial immunity under common law.

 An officer is generally not liable for damages resulting from the execution of a writ if the
officer in good faith executes the writ as provided by law and uses reasonable diligence in
performing his official duties. (3) See Tex.Civ.Prac. & Rem.Code Ann. § 7.003; Chambers v.
Hornsby, 21 S.W.3d 446, 448-49 (Tex.App.--Houston [14th Dist.] 2000, no pet.). An officer
acts in good faith if a reasonably prudent officer, under the same or similar circumstances, would
have acted in the same manner. Id. at 449; Richardson v. Parker, 903 S.W.2d 801, 804
(Tex.App.--Dallas 1995, no writ). Reasonable diligence has been reviewed on a case-by-case
basis. See, e.g., Ko, 934 S.W.2d at 842 (finding deputy exercised reasonable diligence where
deputy attempted to execute writ a day after receiving it, but did not execute based on judgment
debtor's assurances that probate matter was still pending, and later was unable to execute after
judgment debtor filed a UCC statement claiming a security interest in the property); Hickey, 797
S.W.2d at 106-107 (finding no due diligence where officer did not execute writ because debtor
told officer he had filed bankruptcy, but officer did not stop the sale of debtor's property when
the officer later learned that debtor had not filed bankruptcy).

 Further, an officer is conferred with judicial immunity when executing writs, subject to
liability under Section 34.061. See Merritt v. Harris County, 775 S.W.2d 17, 23 (Tex.App.--Houston [14th Dist.] 1989, writ denied). Under derived judicial immunity, an officer of a court
is entitled to the same immunity, that is, absolute immunity, as a judge acting in his or her
official judicial capacity, when the officer acts as an "arm of the court" and when the court
officer's conduct is like that of the delegating or appointing judge. Dallas County v. Halsey, 87
S.W.3d 552, 554 (Tex. 2002); Delcourt v. Silverman, 919 S.W.2d 777, 781-83 (Tex.App.--Houston [14th Dist.] 1996, writ denied), cert denied, 520 U.S. 1213, 117 S.Ct. 1698, 137
L.Ed.2d 824 (1997). Judicial immunity for officers executing writs, however, is qualified by
Section 7.003, which requires good faith and reasonable diligence in the execution. See Merritt,
775 S.W.2d at 23; Freeman v. Wirecut E.D.M., Inc., 159 S.W.3d 721, 728-29 (Tex.App.--Dallas
2005, no pet.)(interpreting the Merritt court's analysis of judicial immunity in light of Section
7.003).

 Appellants assert that because Constable Abercia's deputies acted in good faith and with
reasonable diligence, they were entitled to immunity under Section 7.003 as well as judicial
immunity as a matter of law. Specifically, Appellants point to testimony from Captain Lacey and
Lieutenant Bromley, in which they both indicated that they would not have gone back to levy
again at Gloria's if they only recovered $112 during their first attempt at execution. Each officer,
however, also indicated that under such circumstances they would have made contact with
plaintiff's attorney or the court to receive further instruction or would have obtained additional
information about assets identified by plaintiff's attorney in post-judgment discovery. Here, the
evidence showed that after the first attempt at execution, Kingvision contacted Constable
Abercia's deputies and requested diligence on their part and at a minimum, a second attempt to
levy at Gloria's. Before the writ expired, Kingvision requested that the deputies levy on non-exempt property at Gloria's beyond its initial "cash and coin" request and further directed the
deputies to investigate non-exempt property at defendant's residence. Thus, there was evidence
that Constable Abercia was aware of property subject to execution before the writ expired, but
nevertheless his deputies did not act on Kingvision's requests, which, in effect, cut short the life
of the writ--simply because they did not feel it was worthwhile to levy a second time. We
conclude Appellants failed to establish their affirmative defense of immunity as a matter of law. 
Issue Five is overruled.

Penal Bond

 In Issue Six, Appellants argue the trial court erred in ordering Constable Abercia and Old
Republic Surety jointly and severally liable for the full amount of the judgment because Old
Republic Surety's liability was limited to the statutory maximum penal sum of $1,500.

 Before entering office, a constable must execute a bond with two or more good and
sufficient sureties or with a solvent surety company authorized to do business in this state. 

See Tex.Loc.Gov't Code Ann. § 86.002(a), (c)(Vernon Supp. 2006). The bond must be
payable to the governor and the governor's successors and is conditioned upon faithful
performance of the duties imposed by law. See id. Importantly, the bond must be approved by
the county commissioners court who must set the bond in an amount of not less than $500 or
more than $1,500. See id. § 86.002(a). Further, under subsection (c), claims may be brought for
recovery on the bond until the whole amount of the bond is recovered, that is, the bond remains
in force until the penal sum is exhausted. See id. § 86.002(c).

 Constable Abercia executed the requisite bond with Old Republic Surety in the amount of
$1,500. Old Republic Surety does not dispute that it is obligated to pay Kingvision under the
bond if all or part of the trial court's judgment is affirmed, but instead contends that it is only
liable up to the $1,500 maximum limit of the penal bond. Under Texas law, a surety's liability is
generally limited to the penal sum of the bond. Great American Insurance Co. v. North Austin
Municipal Utility District No. 1, 908 S.W.2d 415, 426 (Tex. 1995). Section 86.002 specifically
limits the penal sum for which a constable's surety will be held liable for the constable's faithful
performance of his or her duties. Thus, by its plain language, Section 86.002 limits Old Republic
Surety's liability to the amount of the bond.

 Kingvision, however, argues that Old Republic Surety is asserting an affirmative defense
that it failed to plead and prove and thus, it has waived its limited liability defense on appeal. We
disagree. Rule 94 of the Texas Rules of Civil Procedure requires a party to plead the listed
affirmative defenses and "any other matter constituting an avoidance or affirmative defense." 
See Tex.R.Civ.P. 94. As a matter of law, Old Republic Surety is liable for only the penal sum of
the bond. Contrary to Kingvision's characterization of the statutory penal bond, Old Republic
Surety was not asserting a matter of avoidance, a policy exception under an excess clause, a
Section 3.606 defense, a statutory damages cap, an immunity claim, lack of capacity, statute of
limitations, an offset, invalidity of a statute, unconstitutionality of a statute as applied, or
preemption. We conclude Kingvision's waiver contention is without merit.

 Kingvision also contends that Old Republic Surety is fully liable because Section 34.065
specifically states that a surety is liable "for the full amount of the debt, plus interest and costs." 
Section 34.065 states in pertinent part:

 If an officer fails or refuses to levy on or sell property subject to execution and the
levy or sale could have taken place, the officer and his sureties are liable to the
party entitled to receive the money collected on execution for the full amount of
the debt, plus interest and costs.

 See Tex.Civ.Prac.& Rem. Code Ann. § 34.065 (Vernon 1997).


Kingvision argues that the plain language of Section 34.065 requires that Old Republic Surety be
held liable of the full amount of the judgment, in excess of the penal bond. Such an
interpretation, however, would conflict with Section 86.002 and be contrary to the Legislature's
intent to limit the surety's liability to a maximum amount of $1,500 for the constable's faithful
performance of his or her duties. See Tex.Gov't Code Ann. § 311.023 (Vernon 2005); Tex.
Dep't of Transp. v. Needham, 82 S.W.3d 314, 318 (Tex. 2002)(primary goal of statutory
construction is to ascertain and give effect to the Legislature's intent in enacting it). To the
extent that there is a conflict between Section 34.065 and Section 86.002, we conclude that
Section 86.002 as the more specific statute controls. See Tex.Gov't Code Ann. §
311.026(b)(Vernon 2005). Issue Six is sustained.

CROSS-APPEAL

 Kingvision raises two issues in its cross-appeal. In Cross-Issue One, Kingvision argues
that the trial court's September 8, 2004 order is the valid order of this case, not its January 14,
2005 order. In Cross-Issue Two, Kingvision argues that the trial court erred by awarding it less
than the full amount of the underlying judgment debt because Constable Abercia and Old
Republic Surety failed to plead and prove any defense to a full award.

 With regard to its first cross-issue, the record shows that the trial court entered an order
granting Kingvision's motion to recover full amount of judgment on September 8, 2004. 
Subsequently, Constable Abercia, joined by Old Republic Surety, filed a motion to modify or
reform the judgment or alternatively to grant a new trial. On December 22, 2004, the trial court
vacated the September 8 order. On January 14, 2005, the trial court signed the Final Order
Granting Motion to Recover Full Amount of Judgment. The final order held Appellants jointly
and severally liable to Kingvision for $109,690.98, plus interest and costs, and imposed a fine of
$100 on Constable Abercia for contempt.

 The trial court has plenary power to grant a new trial, or vacate, modify, correct, or
reform a judgment any time before the judgment becomes final. See Tex.R.Civ.P. 329b(d), (e). 
If a judgment is modified, corrected, or reformed in any respect, the time for appeal shall run
from the time the modified, corrected, or reformed judgment is signed. See Tex.R.Civ.P.
329b(h). Even when a subsequent judgment differs from the original judgment only by the
signature date, the subsequent judgment vacates the former judgment. Owens-Corning Fiberglas
Corp. v. Wasiak, 883 S.W.2d 402, 411 (Tex.App.--Austin 1994, no writ). Any change, whether
or not material or substantial, made in the judgment while the trial court retains plenary power
will restart the appellate timetable from the date the modified judgment is signed. Check v.
Mitchell, 758 S.W.2d 755, 756 (Tex. 1988). The only exception to this rule occurs when the face
of the record reveals that the trial judge signed a second judgment for the sole purpose of
extending the appellate timetables. Mackie v. McKenzie, 890 S.W.2d 807, 808 (Tex.
1994)(limiting the holding of Anderson v. Casebolt, 493 S.W.2d 509, 510 (Tex. 1973)).

 In this case, the January 2005 judgment varied from the original September 2004
judgment in the amount of the damages award. At the December 17, 2004 hearing on motion to
modify or reform the judgment/motion for new trial, the trial court expressed its concern over the
damages award. From the record of the hearing it is clear that the trial court vacated the
September 2004 judgment primarily to modify its judgment on damages as well as to reconsider
the surety and interest rate issues. Therefore, we conclude the trial court did not sign the second
judgment for the sole purpose of extending the appellate timetable. Cross-Issue One is
overruled.

 In Cross-Issue Two, Kingvision contends the trial court erred by awarding it less than the
full amount of the underlying judgment debt. We agree.

 In our disposition of Appellants' Issue Two, we concluded that Appellants failed to meet
their burden in establishing a mitigation defense, therefore the trial court did not err in
concluding that they were liable for Constable Abercia's failure to execute the writ pursuant to
Section 34.065. Section 34.065 specifically states that the "full amount of the debt, plus interest
and costs" is recoverable and further instructs that "[t]he total amount is recoverable on motion
of the party filed with the court that issued the writ, following five days' notice to the officer and
his sureties." See Tex.Civ.Prac.& Rem.Code Ann. § 34.065. As noted above, Appellants
failed to plead and prove any mitigation defense, therefore, Constable Abercia was liable for the
full amount, with Old Republic Surety liable up to the maximum amount of the penal bond. We
sustain Kingvision's second cross-issue as to its contention regarding Constable Abercia's
liability. We overrule Kingvision's second cross-issue to the extent that it is contrary to our
disposition of Appellants' Issue Six.

DISPOSITION

 For the reasons stated above, we reverse the trial court's judgment with respect to its
damages award against Constable Abercia and Old Republic Surety, and in all other respects, the
trial court's judgment is affirmed. We remand the case to the trial court for further proceedings
consistent with this opinion.


 DAVID WELLINGTON CHEW, Chief Justice


February 15, 2007


Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)

Barajas, C.J. (Ret.), sitting by assignment, not participating

1. Specifically, Rule 637 provides:

 When an execution is delivered to an officer he shall proceed without delay to levy the
same upon the property of the defendant found within his county not exempt from execution,
unless otherwise directed by the plaintiff, his agent or attorney. The officer shall first call upon
the defendant, if he can be found, or, if absent, upon his agent within the county, if known, to
point out property to be levied upon, and the levy shall first be made upon the property
designated by the defendant, or his agent. If in the opinion of the officer the property so
designated will not sell for enough to satisfy the execution and costs of sale, he shall require an
additional designation by the defendant. If no property be thus designated by the defendant, the
officer shall levy the execution upon any property of the defendant subject to execution.

Tex.R.Civ.P. 637.

2. Deputy Inman later testified that she checked the vehicles owned by Mr. Baltazar after
the writ expired in March 2004, in preparation for the hearing, because the transfer of title
occurred in February 2004. However, she maintained that even if the vehicle had been seized,
they would not have been able to sell it because the writ expired seven days after the November
10 letter. In addition, there was no indication in the letter whether the vehicle was exempt or
non-exempt.
3. Section 7.003 provides:

 (a) Except as provided by Section 34.061, an officer is not liable for damages resulting
from the execution of a writ by a court of this state if the officer:

 (1) in good faith executes the writ as provided by law and by the Texas Rules of Civil
Procedure; and 

 (2) uses reasonable diligence in performing his official duties.

Tex.Civ.Prac.& Rem.Code Ann. § 7.003 (Vernon 2002).